[S. F. Nos. 4891, 4892, Department Two.—April 14, 1909.]

JAMES M. NOLAN, Appellant and Respondent, v. ARTHUR M. NOLAN, and MAUD NOLAN, Respondents and Appellants, and CATHRIN MORGAN, Respondent.

VENDOR'S LIEN—UNSECURED NOTE FOR PURCHASE MONEY OF LAND SOLD AND CONVEYED—CONDITIONAL TRANSFER FOR COLLECTION—LIEN NOT WAIVED.—The lien of a vendor of land sold and conveyed for un-

paid purchase money evidenced by the unsecured note of the vendee on long time, is not waived by a mere conditional transfer of the note by the vendor for collection, without intention of the vendor to part with the ownership of the note, the transferee being a mere agent for collection, when it appears that the vendor after nonpayment of the note at maturity, resumed full control of it as his own, and sought foreclosure of the lien.

ID.—SUPPORT OF FINDING AGAINST ABSOLUTE TRANSFER.—Under the proofs showing such conditional transfer of the note for collection, and resumption of control by the vendor, a finding that the plaintiff vendor had never made any absolute transfer of the note is sustained by the evidence.

ID.—ADMISSIBILITY OF EVIDENCE—TESTIMONY AS TO OWNERSHIP AND INTENTION AS TO TRANSFER.—There was no prejudicial error in allowing the plaintiff vendor to testify that the note was his property, and allowing his daughter, who was the transferee for collection, to testify that she never owned the note, that it belonged to her father, and in allowing the plaintiff to further testify that when he signed the indorsement to the daughter he did not intend to part with the ownership to his daughter.

ID.—CONCLUSION OF WITNESSES—DISCRETION OF COURT.—Though there is no general rule of evidence which permits a witness to substitute his opinions or conclusions for facts, yet the matter of permitting or refusing to permit such evidence rests largely in the discretion of the trial court whose ruling will not be reviewed unless it is plain that the admission of such evidence has worked an injury. No injury appears, when all the facts might be properly elicited on cross-examination, or proved.

ID.—INTENTION OF PLAINTIFF AS TO TRANSFER.—The question as to intention of the plaintiff in placing the indorsement upon the note was proper and permissible as calling for evidence that the transfer was made conditionally for collection merely, and that the plaintiff retained the beneficial ownership of the note.

ID.—MORTGAGE ON TWO TRACTS—PROTECTION OF HOMESTEAD CLAIM.— Where there is no other question of prior equities, and there is a mortgage on two tracts, on one of which the mortgagor or his wife has declared a homestead, equity will in such case order the other tract to be sold first, for the protection of the homestead, so far as practicable.

ID.—MARSHALLING OF ASSETS—MORTGAGE OR TRUST SUBJECT TO VENDOR'S LIEN AND ON SUBSEQUENT HOMESTEAD—PRIOR SALE OF HOMESTEAD TRACT.—In the marshalling of assets in equity a prior equitable right must be first protected, and where the vendee, whose land is subject to a prior vendor's lien has subsequently mortgaged the same, and also land subsequently acquired by him, on which he has procured a homestead, he cannot insist on the prior sale of the land subject to the vendor's lien, but the vendor has the right in equity to

insist that the mortgaged homestead tract subsequently acquired should be first sold for the protection of his prior vendor's lien.

CROSS-APPEALS from a judgment of the Superior Court of Mendocino County. J. Q. White, Judge.

The facts are stated in the opinion of the court.

Arthur J. Thatcher, and J. C. Ruddock, for James Nolan, Appellant and Respondent.

Thomas, Pemberton & Thomas, for Arthur M. Nolan and wife, Respondents and Appellants.

Mannon & Mannon, for Cathrin Morgan, Respondent.

HENSHAW, J.—In 1891 plaintiff was the owner of a parcel of land in Mendocino County, which, for brevity, may be called the "Nolan place." In that year he sold this land to his son, Arthur M. Nolan, defendant, taking in payment the son's unsecured promissory note for the purchase price, payable fifteen years after date and bearing interest at the rate of two and one-half per cent per annum. The defendant Arthur also purchased an adjoining tract of land, the "Kennedy place." Thereafter he married. In 1901, subsequent to his marriage, he executed a mortgage to defendant Cathrin Morgan to secure the payment of a promissory note for five thousand dollars. This mortgage covered both the Nolan place and the Kennedy place. On January 11, 1906, the defendant Maud Nolan, wife of Arthur, recorded her declaration of homestead on the Kennedy place. On January 22, 1906, the plaintiff commenced this action to recover the amount due on his promissory note, to have adjudged to him a vendor's lien on the Nolan place to secure its payment, and to have his lien foreclosed. Cathrin Morgan pleaded by answer and cross-complaint, setting up her mortgage and her ignorance of any claim of lien upon the part of plaintiff. The court decreed to Cathrin Morgan a mortgage lien upon both the Kennedy place and the Nolan place paramount to the vendor's lien which it found to exist in favor of the plaintiff upon the latter. Cathrin Morgan's judgment was for $5663.50 and costs. Plaintiff was decreed a vendor's lien upon the Nolan place, subordinate to the

Morgan mortgage, for $4269.20 and costs. The court, however, further adjudged and decreed, against the protest of the plaintiff, that Cathrin Morgan do not resort to the Kennedy place (upon which had been declared the homestead) unless, under sale, the Nolan place should prove insufficient to satisfy her judgment, and that plaintiff, under his vendor's lien, should have only the surplus, if any remaining, after the sale of the Nolan place and the satisfaction of the Morgan judgment. Plaintiff appeals from that portion of the judgment so directing the order of the sale of the properties, and this appeal is numbered 4892. Defendants Nolan had tendered issue upon the ownership in plaintiff of the promissory note, contending that he had parted with it by assignment absolute, and so had lost his vendor's lien. From the findings of the court against them upon this issue they appeal, and their appeal is numbered 4891. Upon both of these appeals Cathrin Morgan stands indifferent.

S. F. 4891. It is not disputed that under the sale by plaintiff to his son, the former acquired a vendor's lien (Civ. Code, sec. 3046), but it is said that the evidence establishes the loss of this lien by an absolute transfer of the promissory note. (Civ. Code, sec. 3047.) It is insisted that the finding of the court to the contrary is not supported by the evidence, and, further, that the court erred in its rulings in admitting and rejecting evidence upon the question. The finding of the court was that plaintiff had never made any absolute transfer of the note. The evidence shows that after holding the note for some years there was placed upon it the words "Assigned to Ann O'Neil. James M. Nolan." It shows also that Ann O'Neil, who was the daughter of plaintiff and sister of defendant Arthur Nolan wrote several letters to her brother, notifying him that she held the note, would demand payment of it when due, and would entertain propositions looking to an adjustment and cancellation of it before that time. But it is testified to both by the father and the daughter that this indorsement was not designed to effect an absolute transfer, that an absolute transfer was never made, that plaintiff never parted with the ownership, that Ann O'Neil never in fact owned the note, that she assumed ownership only for the purpose of compelling her brother to pay her father, who was about ninety years of age. Plaintiff, in testifying that

he never parted with the ownership, explains the indorsement by saying that he proposed to make a journey and that he entertained the idea that these words would be necessary as an authorization to his daughter to collect the note for him in his absence. This evidence was sufficient to support the finding that there was no absolute transfer, and a conditional assignment for collection or other like purpose would not destroy the vendor's lien in the event that he was subsequently compelled to resume full ownership of the note. (*Bancroft* v. *Cosby*, 74 Cal. 583, [16 Pac. 504].)

It is further insisted by appellants that the court erred to their injury in overruling their objections to certain questions propounded to plaintiff and to his daughter Mrs. O'Neil as follows:—

"Q. (Asked of plaintiff) Is this note not your own property?

"A. It is.

"Q. (Asked of Mrs. O'Neil) Did you ever own it (the note)?

"A. I never did.

"Q. Do you know who owns it?

"A. My father does.

"Q. (Asked of plaintiff) Now when you signed this (the indorsement) did you intend to part with the ownership to your daughter?"

It is argued against the first three questions that they were improper, in calling for the opinion or conclusion of the witness and not for the facts. Of the last it is said that it was improper, as permitting parol evidence to contradict the legal effect of a writing. Upon the first proposition the industry of counsel has collated numerous cases where appellate courts have discussed the impropriety of permitting the opinion of witnesses to be substituted for facts in cases not calling for expert evidence. A review of these cases would not be profitable. Each one depends upon its own particular circumstances. Of course, there is no general rule of evidence which permits a witness to substitute opinions for facts. Such a rule would lead to the utter confusion and confounding of the administration of justice. The true rule is simple and, so far as this state is concerned, well established: to permit, or to refuse to permit, such questions is a matter

resting largely in the discretion of the trial court, which discretion will not here be reviewed unless it is made plain that the court's ruling in admitting the evidence has worked an injury. Generally speaking, the admission of the answer to such a question cannot work an injury where a fair latitude upon cross-examination is allowed, for under such cross-examination the facts are certain to be adduced. It will be found frequently that an appellate tribunal upholds the rulings of the trial court in sustaining an objection to such questions, but the cases are far less numerous where it has felt compelled to reverse the inferior tribunal for permitting them. Thus in *Kreuzberger* v. *Wingfield,* 96 Cal. 251, [31 Pac. 109], this court had under review the ruling of the trial court in permitting answers of a witness to the following question:—

"Q. And your work is in every way according to the contract that you agreed to do with Von Herlich? Q. What is the character of the work on the Eighth Street side as regards the contract? Is it in accordance with the contract?" This court, holding that the trial court did not err in overruling the objections to the questions, quoted with approval from *Brink* v. *Hanover Fire Ins. Co.,* 80 N. Y. 108: "While it would not have been a legal error to have sustained the objection, I am of the opinion, under the circumstances of this case, that it was not a legal error to overrule it. The object of all examinations in judicial tribunals is to elicit truth, and there are many cases where the form of questions and the manner of examination must be left to the discretion of the trial judge. No injustice could have been done, because the answer would not be likely to prevail against facts which might be drawn out on cross-examination, or proved by other witnesses, inconsistent with it." (See, also, *Alexander* v. *Central L. and M. Co.,* 104 Cal. 532, [38 Pac. 410]; *Tate* v. *Fratt,* 112 Cal. 613, [44 Pac. 1061]; *Bunting* v. *Salz,* (Cal.) 22 Pac. 1132; *Hardison* v. *Davis,* 131 Cal. 635, [63 Pac. 1005].) *Kaltschmidt* v. *Weber,* 145 Cal. 596, [79 Pac. 272], is instructive upon this question. There the following question was propounded: "Who has had the management and control of your wife's earnings during the past fifteen years?" An objection to the question was sustained. It was argued on appeal that only "the facts" were permissible in evidence

and that this called for a mere conclusion of the witness. It was held, after discussion, that even if it did call for a conclusion, it was not such a conclusion as rendered the question obnoxious under objection. It was rather the declaration of an ultimate fact within the knowledge of the witness.

The question as to the intent of the plaintiff in placing the indorsement upon the note was proper and permissible. In principle it is like the rule permitting the introduction of parol evidence to show the true consideration of a written instrument. It did not vary the terms of the writing, for those terms did not express an absolute transfer. It was merely evidence that the transfer was made conditionally and that the plaintiff retained the beneficial ownership of the contract. If such evidence were not admissible, then it must follow that whenever an assignment is made for purposes of collection, the assignor's lips are sealed and the assignee, who under such circumstances is but a trustee, could never be held accountable for the trust property. The appeal of defendants Arthur M. Nolan and Maud Nolan, his wife, from certain portions of the judgment and from the order of the court denying their motion for a new trial is denied.

S. F. 4892. The question presented upon this appeal is one of more complexity, and, in the jurisprudence of this state, a new one. It may be thus stated: Where A has a lien upon two parcels of land, and B has a lien on but one of those parcels, may the common debtor, by virtue of the equity of an after-declared homestead upon one of these parcels, compel the creditor A, in marshalling securities, first to exhaust the security upon the land to which B alone can resort, where the inevitable result will be the impairment, if not the destruction, of B's security? In stating the question we have spoken of the declaration of homestead as having been made by the common debtor, after the attachment of the creditors' liens. In this instance the homestead was declared by the wife; but this circumstance is immaterial. It was a declaration, made upon the separate property of her husband, after the liens had attached, and can have no higher place in equitable regard than if it had been placed upon the property by the debtor himself.

The doctrine of the marshalling of assets and securities is of equitable creation, and in its early application was con-

sidered solely with regard to the respective rights of the creditors. The debtor was given no hearing and allowed no voice in the matter. (1 Story's Equity Jurisprudence, secs. 640 et seq.) It was to many courts a startling and reprehensible extension of the doctrine, when it was first announced that the creditors' rights could be interfered with by an equity arising in favor of the husband or wife by virtue of a homestead. Of the states which announced this extension California was among the earliest, if not the first. In *Bartholomew* v. *Hook,* 23 Cal. 277 (decided in 1863), a judgment had been recovered against the husband and it had become a lien on his land. Subsequently the wife filed a declaration of homestead upon the land, and it was by this court decided that, though the creditor could have recourse to the homestead property if necessary for the recovery of his debt, yet the wife had by her declaration of homestead acquired such an interest in the land as to justify her in maintaining an action against the sheriff to compel him first to resort to the other property of the debtor husband before proceeding against the homestead. Following this came the case of *McLaughlin* v. *Hart,* 46 Cal. 639 (decided in 1873), which held that where A and his wife had given to B a mortgage upon a tract of land, upon fifty acres of which there was a declaration of homestead, and subsequently A had given mortgages upon the same land, excepting the fifty acres affected by the homestead, to C and D, upon foreclosure proceedings the junior mortgagees could not compel B to resort first to a sale of the homestead, to the end that their security might not be impaired; but, to the contrary, A and his wife, by the equity of their homestead, could compel B first to resort to and exhaust the lands not affected by it, even though the result of such procedure would be the destruction of the security of C and D. The justice of this determination was soon recognized and declared in *McCreery* v. *Schaffer,* 26 Neb. 173, [41 N. W. 996]; *Colby* v. *Crocker,* 17 Kan. 527; *Brown* v. *Cozard,* 68 Ill. 178; *McArthur* v. *Martin,* 23 Minn. 74; *Mitchelson* v. *Smith,* 28 Neb. 583, [26 Am. St. Rep. 357, 44 N. W. 871]; *White* v. *Fulghum,* 87 Tenn. 281, [10 S. W. 501]; *Equitable Life Ins. Co.* v. *Gleason,* 62 Iowa, 277, [17 N. W. 524]; *Flowers* v. *Miller,* (Ky.) 16 S. W. 705; *Wilson* v. *Patton,* 87 N. C. 318. Yet it is interesting in this connection to note that the propriety of this exten-

sion of the doctrine of the marshalling of assets and securities did not appeal to all of the courts with equal force. Thus, in 1876, we find the eminent Chief Justice Gray of the supreme court of Massachusetts deciding that the creditors' action in enforcing collection of his debts could not be controlled by the tenant who had acquired a homestead right before the mortgage deed, and who urged that the estate was sufficient to satisfy the mortgage without having recourse to the homestead. He says: "The power of a court of chancery to compel a mortgagee to resort, in the first instance, to one of several estates mortgaged, is exercised only for protection of equities of different creditors and encumbrances or of sureties, and not for the benefit of the mortgagor. As against him, the mortgagee has the right to enforce the contract between them according to its terms, and is not obliged to elect between different remedies or securities"; citing Story's Equity Jurisprudence. The decisions of this state, and of other states which have followed them, are then sweepingly, if not satisfactorily, disposed of by the learned chief justice in the following language: "The cases in some of the western states, cited by the learned counsel for the tenant, so far as they countenance any equity in the owner of a right of homestead as against a party in whose favor he has waived or released it, are supported by no reasons." (*Searle* v. *Chapman*, 121 Mass. 19.) The supreme court of Wisconsin met the same question in *White* v. *Polleys*, 20 Wis. 530, [91 Am. Dec. 432], (1866), and held that where a mortgage covers the homestead and also other property which is subject to the lien of a subsequent judgment, the debtor has no right to have the latter exhausted to satisfy the mortgage, in order to preserve the homestead. *White* v. *Polleys* quotes from an earlier decision of that court in *Jones* v. *Dow*, 18 Wis. 241, to the following effect: "Until the legislature shall have declared the obligation to preserve the homestead superior to that of paying one's honest debts, we must hold the equity of the creditor at least equal to that of the debtor in cases like this." Following which forcible declaration, the legislature did so declare. (Laws of Wis., 1870, p. 198, c. 133, sec. 1.)

Still, notwithstanding some contrariety of opinion, it may be said that, by the great weight of authority, the debtor who has mortgaged an existing homestead will be heard, upon a

marshalling of securities, to insist that recourse shall last be had to the homestead property; that a lien-holder, whose security affects the homestead with other land will, at the instance of the debtor, be compelled to resort first to the other lands, even though by so doing the security of still other creditors upon these other lands is impaired or destroyed. Mr. Freeman considers the question in the following language: "The more reasonable view is, that the equities of the homestead claimants to retain their home is at least equal to that of their creditors to have it sold, and therefore that chancery will not aid the latter by compelling the judgment creditor to first resort to the homestead. Perhaps a more difficult question is, may one who has a lien on the homestead and other property be compelled by the homestead claimants to first resort to the latter? On the one side, it is insisted that the right to compel a marshalling of assets never existed in favor of judgment debtors, but only in behalf of persons claiming under them, and that the creation of the lien by the homestead claimants was, in effect, an agreement on their part that the lien-holder might at his discretion sell any of the property which was subject to such lien, and that such agreement precludes such claimants from exercising any control over such discretion. But homestead laws should be liberally construed, and no intention should be presumed, nor should any interpretation be indulged which is at variance with the natural and obvious purpose of the parties. The claimants, in the absence of any expression of a contrary intent, should be presumed to intend no further peril to their homestead than necessity demands, while he who receives a mortgage from them should be regarded as obtaining a mere security for his debt, and not the right to employ that security in such a mode as to needlessly imperil the homestead." (2 Freeman on Executions, 440.) This right of the homestead claimants, as we have seen, is one which they may exercise even to the detriment of junior encumbrancers of the other lands. This is so, upon the principle that they have taken their junior encumbrances with knowledge of the equities which the homestead carries, amongst which is the important one to direct the senior mortgagee to have recourse first to lands other than the homestead. That the weight of authority supports this view, in accordance with the early enunciation of this court in *McLaughlin* v. *Hart,*

46 Cal. 639, may be seen by an examination of the authorities collated in 26 Cyc. 933; 19 Eng. & Am. Ency., 2d ed., 1269; 34 Century Digest col., sec. 3.

So far as we have proceeded, the question offers no feature of especial difficulty. But the judgment here under consideration leaves the solid ground of the decision in *McLaughlin* v. *Hart* and enters an entirely new territory. *McLaughlin* v. *Hart*, and all other cases which have heretofore been cited, deal with the equities as they arise in favor of or against a junior encumbrancer who has taken his lien with knowledge of an existing homestead. Here we are asked to hold that the debtor, by declaring a homestead after the liens have attached, may as he elects to declare the homestead upon one or the other parcel, protect or defeat a creditor's just claim. Thus in the case at bar, Nolan, by declaring a homestead upon the Kennedy place, and thus forcing a sale of the Nolan place to satisfy the demands of the senior mortgagee, leaves the plaintiff stripped of his security and remediless, whereas, if he had declared his homestead upon the Nolan place, the Kennedy place would first have been sold to satisfy the demand of Mrs. Morgan, and this plaintiff in turn would have had the right to subject the Nolan place to sale to satisfy his vendor's lien. The whole doctrine of the marshalling of assets for the protection of the common debtor, as well as of the creditors, is, as we have said, of equitable origin and growth. It will be extended so far as may be necessary to protect the rights of all. But an extension of it will be withheld when the manifest result is to promote a subsequent equity, into a position of superiority over a prior equity, to the injury of the holder of the earlier. The rule, like all equitable rules, will not be enlarged, or, if enlarged, will not be enforced, to the displacement of a countervailing equity, or where, for any special facts, it would be inequitable to enforce it. (*Miller* v. *McCarthy,* 47 Minn. 321, [28 Am. St. Rep. 375, 50 N. W. 235].) And that such would be the result, if the contention of respondent was to prevail, can admit of no doubt. This precise question was presented in *Abbott* v. *Powell,* 6 Sawy. 91, [Fed. Cas. No. 13], and was learnedly considered by Hoffmann, J. *Bartholomew* v. *Hook,* 23 Cal. 277, and *McLaughlin* v. *Hart,* 46 Cal. 639, were cited in support of the contention. The learned judge declared:

"But neither of these cases contains the slightest intimation that where a person has made a mortgage on two pieces of property, and afterwards makes a second mortgage on one of them, the equitable right of the junior mortgagee to compel the first mortgagee to resort in the first instance to the property on which he has an exclusive claim, can be taken away or impaired by a (subsequent) declaration of homestead, by either husband or wife, on the property exclusively mortgaged to the first mortgagee. I have been referred to no case which hints at so inequitable a rule. The junior mortgagee, when accepting the security of a second mortgage, had a right to repose upon the protection afforded him by the familiar rule of equity, and to act upon the assurance that the first encumbrancer would be compelled to resort to the property on which he had an exclusive claim, before coming on the property covered by the second mortgage, and that no act of the mortgagor could deprive him of the right to compel him to do so. . . . I can conceive no reason, of justice or policy, why this right, which confessedly existed as between the first and second mortgagees, and which grew out of the contracts of the mortgagor himself, should be destroyed or impaired by the filing by the latter or his wife, of a declaration of homestead." To the same effect is *Savings Bank* v. *Harbin,* 18 S. C. 425. Excepting where express legislative declaration gives superiority to the homestead under such circumstances, no case has been called to our attention where a court has done so, saving the one case of *Marr* v. *Lewis,* 31 Ark. 203, [25 Am. Rep. 553]. The judgment in that case was precisely that in the case at bar, and it was held that the junior mortgagee was not entitled to a marshalling of securities so as to compel the senior mortgagee first to resort to the after-declared homestead. But no reason is assigned, the court contenting itself with the declaration that "a court of equity will never displace or impair one equity for the purpose of asserting or upholding another," forgetting that this is essentially what a court of equity is always called upon to do (*Salter* v. *Barker,* 54 Cal. 140), and what that court itself did, though we think erroneously, when it displaced the equity of the junior mortgage to give preference to the equity of the after-declared homestead. The practical result of upholding such a doctrine in this case merits brief consideration. A father

sells to his son his home place, upon terms of great indulgence —a note running for fifteen years, with interest at the low rate of two and a half per cent. He holds a vendor's lien upon the land, which, by reason of this same indulgence is subordinated to the claims of a subsequent mortgagee. During the fifteen years the son has occupied and enjoyed the land. When the time for the payment of the note is about due, the note and accumulations of interest remaining unpaid, he causes a homestead to be declared upon an adjoining tract, which is also covered by the mortgage, for the very obvious purpose, not of protecting his father in his vendor's lien, but of defrauding him out of the security of that lien. This bare statement should be enough to dispel the notion that such an after-declared homestead carries with it an equity superior to such a vendor's lien. It follows herefrom that the plaintiff is entitled to a marshalling of securities and to à decree declaring that the Kennedy place shall first be sold in satisfaction of the Morgan mortgage, before resort shall be had to the land in which he has the security of his vendor's lien.

Upon the appeal of James Nolan it is ordered that such part of the judgment be reversed and a judgment be entered in conformity with the foregoing.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.