[Civ. No. 11602. First Dist., Div. Two. Mar. 11, 1942.]

ALBERT J. WHITFIELD, Respondent, v. JOSEPH DEB-
RINCAT, Appellant.

John J. Taheny for Appellant.

Bronson, Bronson & McKinnon and Archibald D. McDougall for Respondent.

STURTEVANT, J.—At about 8:15 p. m. on the evening of July 8, 1933, plaintiff was driving a light Buick automobile in a southerly direction on the Skyline Boulevard in San Mateo County. The defendant Debrincat was driving a heavy Buick automobile northerly along said boulevard. At a point about two miles south of the boundary line between San Mateo County and San Francisco the two automobiles collided. To recover damages for injuries sustained in said collision the plaintiff commenced this action. The defendant answered and on the issues framed a trial was had. The verdict was in favor of the defendant. A motion for a new trial was granted. A second trial was had in May, 1935, and the verdict was in favor of the plaintiff. A motion for a new trial was granted and the order was affirmed on appeal. (*Whitfield* v. *Debrincat,* 18 Cal. App. (2d) 730 [64 Pac. (2d) 960].) A third trial was had in July, 1937, which resulted in favor of the defendant. A new trial was ordered and that order was affirmed on appeal. (*Whitfield* v. *Debrincat,* 35 Cal. App. (2d) 476 [96 Pac. (2d) 156].) A fourth trial was had in April, 1940, which resulted in a verdict of $14,000 in favor of the plaintiff. This appeal is from the judgment entered upon said verdict.

At the point where the accident occurred the plaintiff was driving uphill and the defendant was driving downhill on a grade of about 4½ per cent. Neither car was traveling faster than 30 miles per hour. Both cars had their lights turned on and each car was seen by the driver of the other several hundred feet distant. The roadway was paved and had a white stripe painted along its middle line. The course of the road was curved but at about the point of the collision the arcs of the curves were broad.

Riding in the car with the plaintiff was a guest, Madeline Trobock. Riding with the defendant was Joe Grima. Excepting those individuals there was no other eyewitness. It was the contention of the plaintiff that the defendant was driving on his left-hand side of the road and of the white line. On the other hand it was the contention of the defendant that the plaintiff was driving on his left-hand side of the road and of the white line. These two conflicting theories were presented by the attorneys for the respective parties with meticulous care in their opening statements. The evidence introduced by the parties was conflicting.

The defendant claims the physical facts show he was not

to blame. He calls attention to gouges cut in the roadway. An examination of the record discloses that one gouge was on plaintiff's side. Considered solely by itself it is opposed to the defendant's contention. The other gouge mentioned was about 70 feet south from the gouge first mentioned. When that gouge was made the evidence does not show. Neither does the evidence connect it with the collision. It is of little help. Another physical fact relied on by the defendant is the condition of the plaintiff's car after the accident. The defendant claims the body of the car shows it was struck twice and that such fact tends to support the defendant's theory that the plaintiff's car was on the wrong side of the highway and was struck twice as defendant drove forward. The photographs show such injuries to the plaintiff's car that the question as to whether it was hit once or twice is clearly debatable.

The defendant asked the trial court to give an instruction as follows: ''You are instructed that the California Vehicle Act, in effect at the time of the accident complained of, provided that upon all highways of sufficient width, other than one-way highways, the driver of a vehicle shall drive the same upon the right half of the highway and as close to the right-hand edge or curb of such highway as is practicable, except when overtaking and passing other vehicles, in which event the overtaking vehicle may be driven on the left side of the highway, if such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made completely without interfering with the safe operation of any vehicle approaching from the opposite direction; and provided that such overtaking vehicle shall return to the right-hand side of the highway before coming within one hundred feet of any vehicle approaching from the opposite direction, and in no event shall a driver drive to the left side of the center line when approaching the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed, *and if you find from the evidence that the plaintiff, Whitfield, failed to comply with said law, and that such failure proximately caused his injuries, then you are instructed that said plaintiff was guilty of negligence and cannot recover against the defendant.''* (Italics ours.) The trial court struck out the portion we have italicized and then gave the instruction. The defendant contends that the modification was error.

We think it was not error. The instruction as given was not an erroneous statement of the law. (Sec. 122, California Vehicle Act.) But it was not addressed to the issue on trial. If plaintiff was driving on his left hand side of the middle of the highway and a collision occurred, the cause thereof was his violation of the provisions of section 124 and not section 122 of the California Vehicle Act. The violation of the provisions of the latter section would be at most a remote cause and not the proximate cause of the accident.

The trial court gave the following instructions:

"You are instructed that the plaintiff while in the operation of his automobile immediately prior to and at the time of the accident involved in this case, was not under the duty to exercise the utmost or highest degree of care. The only duty imposed upon plaintiff was that of exercising the care of an ordinarily prudent person acting under like circumstances, and if you should find from the evidence in this case that said plaintiff immediately prior to and at the time of the said accident, was conducting himself while in the operation of his automobile in the same manner that any other person of ordinary care and prudence, acting under like circumstances, would have conducted himself, then said plaintiff was not guilty of contributory negligence.

"Before the plaintiff can recover in this action it must first appear by a preponderance of evidence that the defendant was guilty of some act of negligence which contributed proximately to the accident.

"Contributory negligence is defined as such an act or omission on the part of an injured party amounting to a want of ordinary care, as, concurring or cooperating with the negligent act of a defendant, was the proximate cause of the injury complained of. Unless it is shown by, or may be inferred from the evidence offered by plaintiff, such negligence is a matter of defense, to be proved affirmatively by the defendant. It is not incumbent upon the plaintiff to prove that he was free from contributory negligence. Contributory negligence cannot be presumed from the mere fact of injury." The defendant objects to each one. He asserts or implies each was given at the request of the plaintiff. The record does not show such was the fact. It shows (1) the instructions given; (2) instructions requested by defendant which the court modified and gave; and (3) instructions requested by defendant but which the trial court refused to give. As it is presumed the trial court did not err, we must

assume in support of the judgment that each of said instructions was given at the request of the defendant. (2 Cal. Jur. 870; *Sutter Butte C. Co.* v. *American R. & A. Co.*, 182 Cal. 549, 554 [189 Pac. 277].)

The trial court gave instructions which stated affirmatively the duties of drivers of motor vehicles. (Sec. 113 (a), sec. 113 (b) 1, sec. 122, and sec. 124 (a), California Vehicle Act.) But defendant asked and the trial court refused to give an instruction that the defendant was not required to use the utmost care. The requested instruction might well have been given, but where, as here, the court states the rules of law affirmatively it is not reversible error to refuse to negative other possible elements not contained in the statutory rules.

The trial court instructed the jury as follows: "One who is himself exercising ordinary care has a right to assume, until the contrary becomes apparent, that all other persons using a street or highway will obey the law and use ordinary care." It is not claimed the instruction was an erroneous statement of the law. Moreover it applied to both parties. But the defendant asked and the trial court refused an instruction worded as follows: "While it is the law that the plaintiff Albert Whitfield had a right to assume that all others, including the defendant, would exercise ordinary care and obey the rules of the road herein defined, he was not entitled to assume that others would exercise ordinary care if at the same time the plaintiff was acting in a negligent or careless manner or was himself violating any of said rules of the road." The defendant contends it should have been given and he cites and relies on *Varner* v. *Skov*, 20 Cal. App. (2d) 232, 239 [67 Pac. (2d) 123]. As intimated by the court in the cited case the requested instruction might well have been given. But as stated by the same court it was not reversible error to decline to give it.

The plaintiff called Charles T. Rowley as a witness. He arrived at the scene of the accident a few minutes after the collision. His attention was directed to the "gouge" in the road near the white post. The attorney for the plaintiff then asked him, "Q. Where did you see the marks commence? Mr. Taheney: Just a moment. I object to his testifying where they commence. The court: Objection overruled. A. When I first got out of the car I walked across the road. Those marks was definite, you couldn't help but see them, and I presume, by that marker, they commenced about five feet south of the marker." We think the trial

court did not err in overruling the objection. (*Nolan* v. *Nolan,* 155 Cal. 476 [101 Pac. 520, 132 Am. St. Rep. 99, 17 Ann. Cas. 1056].) On page 481, the court quoted with approval as follows: ''While it would not have been a legal error to have sustained the objection, I am of the opinion, under the circumstances of this case, that it was not a legal error to overrule it. The object of all examinations in judicial tribunals is to elicit truth, and there are many cases where the form of questions and the manner of examination must be left to the discretion of the trial judge. No injustice could have been done, because the answer would not be likely to prevail against facts which might be drawn out on cross-examination, or proved by other witnesses, inconsistent with it.''

The defendant assigns misconduct of the attorney for the plaintiff. The alleged acts involved the following facts. The trial commenced on the 25th day of April, 1940. As from the beginning the plaintiff introduced evidence regarding the nature of his injuries, his incapacity to follow his profession as a dentist, the continuation of that incapacity, and also evidence regarding surgical operations which took place in the meantime. It transpired that the plaintiff carried accident insurance and was compensated at the rate of $350 per month. On the third day of the trial, for reasons not disclosed in the record, a conference was held in the chambers of the judge of the trial court without the presence of the jury. In that conference plaintiff's attorney stated that the plaintiff waived ''. . . the issues and proof relative to any loss of earnings *from the period of the accident until the period he returned to work.*'' No objection was made to the waiver. In the same conference it was stipulated ''. . . that at the conclusion of the trial the court can give the jury instructions that the subject of the loss of earning capacity is not a matter for them to consider in estimating damages.'' Later the terms agreed on at the conference were carried out. At this time the defendant complains that he was deprived of cross-examination. However, we find no place in the record that he sought to cross-examine, that an objection was sustained, or that any other ruling was made by the trial court. In the light of the foregoing facts the contention comes too late.

The trial court instructed the jury as follows: ''You are instructed that if your verdict is in favor of the plaintiff, Dr. Whitfield, in fixing his damages you should award him

such amount as will compensate him for the injuries sustained by him, if any, including such amount as will compensate him for pain and suffering certain to result in the future.'' The defendant objects to that instruction and to others. His objection is closely allied to the point last discussed. He says: ''To tell the jury that they may in the face of a waiver for all claim of loss of earning capacity, award damages for the pain and suffering and for the injury is to ignore the waiver.'' A comparison of the waiver with the language of the instructions given discloses that there was no conflict. On the contrary the instructions given were more favorable to the defendant than was permissible under the terms of the waiver.

The defendant asserts that the plaintiff was guilty of contributory negligence as a matter of law. He relies on the provisions of section 122, subdivision (b) of the California Vehicle Act. We have discussed that contention above. He also relies on the provisions of section 113, subdivision 3. That provision limits speed as follows: ''Fifteen miles an hour in traversing or going around curves or corners of a highway when the driver's view is obstructed within a distance of two hundred feet along such highway in the direction in which he is proceeding.'' There is evidence that there were curves in the highway. However, there were plats in evidence drawn to a scale by competent engineers. An examination of such plats discloses that at the place of the impact the jury might have found the plaintiff's view of the road was not obstructed nor was it obstructed two hundred feet north of said point. In other words, this court is unable to say that the jury erred in finding that the plaintiff was not guilty of contributory negligence.

The plaintiff called Carl Stern as a witness. He drew the witness' attention to a gouge in the road. Having asked the witness several questions, the following proceeding occurred: ''Q. Let me ask you this—now, your Honor, I want to show the witness this transcript and the testimony. This is Mr. Taheney's direct examination. The Witness: I will say this, that the mark at that time (November, 1934) that I saw out there first, appeared to be what you just termed a fresh mark. As to the definite time when it was made, I don't think that is humanly possible to determine that.'' No objection was made, nor was there a motion to strike. The volunteer remark of the witness was not prejudicial error.

The defendant also contends that the verdict, $14,000,

was grossly excessive. The special damages proved by the plaintiff amounted to $3,695.48, a little over $10,000 was awarded as general damages. Admitted facts are that for nearly a year the plaintiff was under the constant care and treatment of doctors; and that in the early part of 1935 a final operation was performed and the little finger on his left hand was amputated. There is nothing in the record showing passion or prejudice. To say that a verdict has been influenced by passion and prejudice is but another way of saying that the verdict exceeds any amount justified by the evidence. (*Doolin* v. *Omnibus Cable Co.*, 125 Cal. 141, 144 [57 Pac. 774].) All facts considered we are unable to say the verdict in the instant case was excessive.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing was denied April 10, 1942, and appellant's petition for a hearing by the Supreme Court was denied May 8, 1942.