[Civ. No. 3148. Fourth Dist. Jan. 26, 1945.]

TONY ASTONE et al., Appellants, v. ROBERT YALE OLDFIELD et al., Respondents.

M. G. Gallaher, Bernard E. Allard and Rae B. Carter for Appellants.

W. M. Conley, Philip Conley, Matthew Conley and Conley, Conley & Conley for Respondents.

MARKS, J.—This is an appeal from a judgment entered after a jury had returned a verdict for defendants in an action for damages resulting from a collision between two motor vehicles in the intersection of Shaw and Brayley Avenues in the county of Fresno shortly after five o'clock in the afternoon of November 23, 1942.

Plaintiffs are husband and wife. They were traveling south on Brayley Avenue in a 1930 Durant automobile driven by Tony Astone. Robert Yale Oldfield, an employee of Stewart & Nuss, was driving a dump truck east on Shaw Avenue. With its load it weighed about twelve tons. It had a wheel base of ten feet and an overall length of fourteen feet.

Brayley Avenue runs north and south, and Shaw Avenue east and west. The improved portion of Brayley Avenue is between 17 and 19 feet wide and Shaw Avenue is between 25 and 26 feet wide. The intersection is an obstructed one as defined in section 511 of the Vehicle Code.

There is a bridge over a canal which crosses Shaw Avenue. The east end of this bridge is about 265 feet west of the intersection. On leaving this bridge the roadway to the east descends three feet and nine and one-half inches in about 145 feet and then runs on level to the intersection.

There is a fig orchard at the northwest corner of the intersection. It had commenced to drop its leaves and a witness estimated that on the day of the accident about 25 per cent of its foliage had fallen. The tree next to the south end of the row adjoining Brayley Avenue on the west was gone leaving a clear space about 45 feet wide through which a driver on either street could see a vehicle on the other from points about 85 feet north or west of the intersection. One small fig tree remained near the northwest corner of the intersection. Its branches covered a space about ten feet in diameter. They were about 20 feet west of the west edge of the improved portion of Brayley Avenue, about 15 feet north of the north edge of the improved portion of Shaw Avenue and about 25 feet northwesterly from the point of intersection of those lines. A photograph indicates that a driver on Brayley Avenue could

see Shaw Avenue through the fig trees from a point further than 85 feet north of the intersection.

Tony Astone testified that the brakes on his automobile were in good condition and when applied would stop the car in a very short distance, which he estimated at about two feet, when the vehicle was traveling 15 miles an hour. This is disputed by the evidence of two mechanics who examined, tested and drove the car after the accident. They found the brake linings were gone on three wheels and mostly worn away on the fourth; that the brakes were full of grease; that the car was practically without brakes.

Tony testified that before the accident he was driving south on Brayley Avenue at a speed of 20 miles an hour; that when one or two hundred feet north of the intersection he took his foot off the throttle and proceeded at a gradually reduced speed so that he entered the intersection at 15 miles an hour; that when he had cleared the fig trees and had about reached the intersection he looked in both directions and saw no vehicles on Shaw Avenue; that he proceeded into the intersection and suddenly saw the truck bearing down on him; that he could not avoid the collision; that at the moment of impact the rear wheels of his automobile were on or south of the center line of Shaw Avenue, and west of the center line of Brayley Avenue; that he had crossed many times and knew that Shaw Avenue was a through street that sometimes carried considerable traffic.

Mrs. Astone testified that when the automobile had about reached the intersection she looked in both directions on Shaw Avenue and saw no vehicles; that she saw the truck for the first time immediately before the collision when it was four or five feet away.

The front of the truck struck the right rear door of the automobile turning it over on its right side. Both plaintiffs were seriously injured.

T. E. Tucker testified that he was driving his car west on Shaw Avenue and was about 350 or 400 feet east of the intersection at the time of the collision.

Oldfield testified that he was driving the truck east on Shaw Avenue at a speed of about 30 miles an hour; that when he crossed the bridge already mentioned, he applied the brakes gently descending the slight decline to keep the vehicle from gaining speed; that he kept his foot on the brake in approach-

ing the intersection; that he saw the Astone car traveling south on Brayley Avenue when he was about 50 or 75 feet west of the intersection; that the two vehicles approached the intersection at about equal distances from it; that he applied his brakes gently in approaching the intersection; that when his rear wheels were 30 feet west of the intersection he realized the Astone car was not going to stop; that he applied his brakes hard, locking some if not all of the six wheels on the truck; that ''up until the time before the impact he (Astone) was—it looked like he (Astone) was attempting to slow down and then he picked up speed at approximately just before the impact; . . .'' that Astone swerved to his left just before the collision; that both vehicles entered the intersection at about the same time; that the speed of the truck had been reduced to about 15 or 20 miles an hour at the time of the impact; that the speed of the Astone car was 15 or 20 miles an hour when it was crossing the intersection.

Plaintiffs do not contend that the verdict lacks evidentiary support, nor could they well do so in view of the evidence. Oldfield testified that the two vehicles approached the intersection at about the same distances from it. The undisputed evidence shows Astone had two unobstructed views of portions of Shaw Avenue westward from the intersection. The first was from a point at least 85 feet north of the intersection, to a point about 40 feet north of the intersection; the second was from a point about 25 feet north of the north line of the intersection. Had he availed himself of either, he could have seen the approaching truck, if the undisputed testimony of Oldfield to the effect that the two vehicles approached the intersection at about equal distances from it be accepted as true. If the vehicles reached the intersection at the same time, Astone should have yielded the right of way to the truck which was to his right. (Veh. Code, § 550.) The conclusion of contributory negligence on the part of plaintiffs, if drawn by the jury, would find ample support in these facts.

 Plaintiffs base their argument for a reversal of the judgment on the denial of their motion to strike out an answer of a member of the California Highway Patrol as to the condition of the brakes on the truck, and also upon instructions given at the request of defendants which they maintain were prejudicially erroneous.

The officer gave the following testimony after testifying that he had tested the brakes on the truck: ''Q. What did you find the condition of the brakes to be? A. We found that the truck

brakes conformed with the law requirement.'' The motion to strike was on the ground that the answer was a legal conclusion of the witness. We are of the opinion that technically it would have been better to have granted the motion.

Oldfield testified in effect that the brakes on the truck were in good condition and sufficient to bring the vehicle to a stop within the distances specified in the statute. (Veh. Code, § 670.) This evidence was received without objection and no motion was made to strike it out. There was no evidence contradicting this testimony.

With this state of the record we do not regard the error, if any, in denying the motion to strike, as prejudicial. The answer of the officer was merely cumulative of other evidence already before the jury, the truth of which was not disputed by anything in the record. The denial of the motion, while perhaps error, thus was not so serious as to require a reversal of the judgment.

Defendants seek to support this ruling of the trial court by arguing that the answer of the officer was in respect to a composite fact, the admission of which in evidence was within the discretion of the trial court. In support of this argument they cite such cases as *Kreuzberger* v. *Wingfield*, 96 Cal. 251 [31 P. 109]; *Kaltschmidt* v. *Weber*, 145 Cal. 596 [79 P. 272]; *Nolan* v. *Nolan*, 155 Cal. 476 [101 P. 520, 132 Am.St.Rep. 99, 17 Ann. Cas. 1066]; *Hardison* v. *Davis*, 131 Cal. 635 [63 P. 1005]; *Whitfield* v. *Debrincat*, 50 Cal.App.2d 389 [123 P.2d 591]. In view of our conclusions already stated we do not need to pursue this subject further.

At the request of defendants the trial judge gave an instruction on unavoidable accident. Plaintiffs maintain that the instruction, while correct in form, was inapplicable to the facts of this case and that it was prejudicial error to give it. (*Hyman* v. *Market St. Ry. Co.*, 41 Cal.App.2d 647 [107 P.2d 485]; *Scandalis* v. *Jenny*, 132 Cal.App. 307 [22 P.2d 545].) They argue that the evidence is so clear to the effect that the accident was caused by the negligence of one driver or the other that there is no room to even suppose that it was the result of an unavoidable accident.

Defendants argue that if the testimony of plaintiffs be accepted as literally true in all its details, and the evidence of Oldfield be believed in its entirety, the conclusion, if drawn, that neither was guilty of negligence must follow, and there-

fore, the collision could have been only an unavoidable accident.

From a study of the record we regard this argument as extremely tenuous and not justified. To the contrary the testimony of plaintiffs to the effect that they did not look for traffic on Shaw Avenue approaching from the west until they had about reached the north boundary of the intersection, and then, when they looked, they did not see the approaching truck which must have been in plain sight, coupled with other undisputed evidence to the effect that they had a clear view of Shaw Avenue from two places on Brayley Avenue north of the intersection, all point so strongly to the contributory negligence of Tony Astone that there was hardly room for any reasonable belief that the collision was due to unavoidable accident. We must conclude that the members of the jury were reasonable men and women and therefore must ascribe the verdict reached by them in deciding a question of fact, to the reasonable conclusion that Tony Astone was guilty of negligence that proximately contributed to the accident, rather than to any mental confusion produced by the instruction on unavoidable accident. His negligence is so apparent from his own testimony that it is highly improbable that the jurors could have been influenced by the instruction. While the instruction should not have been given we cannot regard the giving of it so prejudicially erroneous as to require a reversal of the judgment. (Const., art. VI, § 4½.)

At defendants' request the trial judge gave the following instruction to the jury:

"A person who exercises ordinary care himself has a right to assume that other persons using the highways will also use ordinary care and obey the law. In this case, if you find from the evidence that Robert Oldfield was in the exercise of ordinary care at the time of, and preceding, the collision, he had the right to assume that the plaintiff, Tony Astone, would exercise ordinary care and obey the law."

Plaintiffs attack this instruction on the ground that it omitted the necessary element to the effect that a person may not rely on such an assumption if he knows or has reason to know that the other person will not obey the law or use ordinary care. (*Angier* v. *Bruck*, 56 Cal.App.2d 55 [131 P.2d 876].)

The instruction immediately preceding the one we have quoted contained the missing element. The instruction immediately following informed the jurors that they must not

base their verdict upon any single instruction but must consider all of them as a whole.

What was said in *Barlow* v. *Crome,* 44 Cal.App.2d 356 [112 P.2d 303], is applicable here:

"It has been often stated that a trial court is not required to state all the law applicable to a case in a single instruction. The instructions must be read as a whole, viz., each instruction should be considered in connection with the others and if, without straining any portion of the language, the instructions harmonize as a whole, and fairly and accurately state the law, a reversal may not be had because of verbal inaccuracies, because isolated sentences and phrases are open to just criticism, or because a separate instruction does not contain all of the conditions and elements which are to be gathered from the instructions as a whole. The entire instructions should be given a fair and reasonable construction with a view to ascertaining their probable effect upon the jury, and must be considered in the light of the issues raised by the pleadings, and the words employed will be construed in accordance with their natural and ordinary meaning. (Citing cases.)"

Taken in their entirety the instructions properly set forth the law on this subject.

The trial court instructed the jury on the question of the negligence of a person who knowingly operates a motor vehicle with insufficient and deficient brakes. Plaintiffs urge that it was error to give such an instruction as "thereby the court submitted an alien issue to the jury and an issue that was plainly calculated to mislead the jury."

We cannot agree with this contention. Four witnesses testified on the question of the condition of the brakes on one vehicle or the other, without including the evidence of the officer already alluded to. Plainly the condition of brakes was made an issue during the trial.

It is also urged that the defective brakes on the Astone car was not involved in the case nor a contributing cause of the collision. We cannot agree with this argument. Astone testified that his car slowed down for at least 100 feet before reaching the intersection. Oldfield testified that the automobile first slowed down and then speeded up in the intersection. The jurors are judges of the weight to be given evidence and the credibility of witnesses. They may reject part or all of the testimony of a witness, or accept any part of it as true.

The foregoing testimony would support either of two reasonable inferences, if drawn. First, the jurors may have con-

cluded that on entering the intersection Astone applied his brakes and, finding them worthless, had speeded up in an endeavor to cross in front of the truck. Second, they might have concluded that the slowing of the automobile in the intersection was a continuation of the slowing process mentioned by Astone during the 100 feet north of Shaw Avenue, and that, knowing his brakes were worthless and that he could not avoid a collision by stopping his car, he had attempted to avoid the collision by speeding up in an endeavor to cross in front of the truck.

Under these circumstances the question of the condition of the brakes was a material issue on which it was proper to instruct the jury.

■ The following instruction was given at the request of defendants:

"It is as much negligence to look and not to see as it is negligence not to look at all. Therefore, if you find from the evidence that plaintiff, Tony Astone, did not use his powers of observation as a reasonably careful and prudent person would have done in the same circumstances, and that he was guilty of negligence which proximately contributed to the happening of the collision, your verdict must be against the plaintiffs and in favor of the defendants."

Plaintiffs urge that the first quoted sentence is erroneous because of the omission of the words, "that which is in plain sight," or words to that effect, after the word "see." Of course it is not negligence to fail to see something that is concealed and it would have been better form to have incorporated the suggested words in the sentence. However, in the next sentence the jury was instructed that if "Tony Astone did not use his powers of observation as a reasonably careful and prudent person would have done in the same circumstances, and that he was guilty of negligence," etc., he could not recover. No reasonable person would expect another person, no matter how reasonably prudent or careful he might be, to see something not within the range of his vision. The suggested words are implied in the whole instruction and plaintiffs were not prejudiced by its being given in the form proposed. It clearly appears from the evidence that two vehicles were approaching this intersection on Shaw Avenue at this time, and that Astone saw neither of them.

While there may be minor errors in the instructions given, we cannot conclude that the jury was misled and that plain-

tiffs suffered sufficient prejudice therefrom to warrant a reversal of the judgment. (*Shuey* v. *Asbury,* 5 Cal.2d 712 [55 P.2d 1160].)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.