[Civil No. 2446. Filed February 17, 1926.]

[243 Pac. 415.]

## HENRY MOUNCE and EDITH E. MOUNCE, Appellants, *v.* ELIZA J. WIGHTMAN, Appellee.

1. MOTIONS—ORDER IN MORTGAGE FORECLOSURE PROCEEDING HELD NOT RES JUDICATA.—Where owners of second mortgage on cattle and land and third mortgage on same cattle sued to foreclose third mortgage only, *held* order denying motion to compel them to foreclose second mortgage in same action and apply proceeds of cattle to its satisfaction was not, in subsequent action to foreclose second mortgage, *res judicata* of mortgagors' right to compel mortgagee to apply proceeds of cattle to satisfaction of second mortgage before resort to land covered by such mortgage constituting homestead.

2. HOMESTEAD—HOLDERS OF SECOND MORTGAGE HELD NOT ENTITLED TO FORECLOSE IT AGAINST HOMESTEAD LAND AFTER HAVING SOLD, UNDER THIRD MORTGAGE, CATTLE COVERED BY SECOND, MORE THAN ENOUGH TO SATISFY SECOND.—Holders of second mortgage on land constituting homestead and on cattle, who foreclosed third mortgage on same cattle, *held* not entitled to foreclosure of second mortgage against homestead land; proceeds of cattle having been

more than sufficient to satisfy second mortgage if so applied; this notwithstanding homestead declaration was filed after execution of mortgages.

3. HOMESTEAD—DEBTOR'S RIGHT TO COMPEL CREDITOR'S RESORT TO OTHER PROPERTY BEFORE HOMESTEAD STATED.—Debtor can require creditor ·to exhaust other property on which he has lien, and even to resort to assets on which no lien exists, before enforcing rights against homestead.

4. MARSHALING ASSETS AND SECURITIES—ONE CREDITOR CANNOT COMPEL ANOTHER TO RESORT TO HOMESTEAD PREMISES FIRST.—Creditor who can reach only nonhomestead property cannot compel one whose security extends to both to resort to homestead premises first.

See (1) 27 Cyc., p. 1547, n. 68; 29 Cyc., p. 1521, n. 79.   (2) 29 C. J., p. 878, n. 8.   (3) 29 C. J., p. 878, n. 8, 9; 38 C. J., p. 1375, n. 60.   (4) 38 C. J., p. 1375, n. 59.

APPEAL from a judgment of the Superior Court of the County of Gila.  Dudley W. Windes, Judge. Judgment reversed, with instructions.

Mr. Jay Good and Messrs. McKenzie & Loose, for Appellants.

Mr. L. L. Henry and Mr. W. D. Moore, for Appellee.

LOCKWOOD, J.—Henry Mounce and Edith E. Mounce, his wife, hereinafter called defendants, were the owners of certain real estate in Graham and Gila counties, Arizona, and a number of cattle running on the open range in the same counties.  This property was subject to various encumbrances, which were, in their order: First, a mortgage on the cattle alone in favor of the First National Bank of Globe for approximately $2,600; second, a mortgage for about $1,700 on both the cattle and the land involved in this case to one J. W. Rais; and, third, a chattel mortgage

3.  See 18 R. C. L. 464.
4.  See 18 R. C. L. 463.

on the cattle to Eliza J. Wightman, hereinafter called plaintiff, and to one Rolla Wightman, for some $35,000. This last indebtedness was also secured by a realty mortgage on the land situated in Graham county.

J. W. Rais transferred his mortgage to Sam Rais, and the latter, in January, 1924, sold it to plaintiff. On February 1st, 1924, defendants filed a declaration of homestead under the statute, embracing the land covered by the Rais mortgage, and shortly after suit was brought by plaintiff and Rolla Wightman in Graham county to foreclose the third mortgage; the First National Bank of Globe, the holder of the first mortgage, being duly made a party thereto. Defendants answered the complaint, and set up the declaration of homestead and the second mortgage above referred to, asking that the Wightmans be required to foreclose the latter in the action, and that it be ordered the proceeds from the sale of the mortgaged cattle be applied: First, to pay the bank; second, to satisfy the Rais mortgage, and the balance to be paid upon anything found due the Wightmans.

Upon hearing this application, the trial court entered the following order:

"The prayer of the defendants to require the plaintiffs to amend their complaint and foreclose the Rais mortgage in this action will be denied."

Thereupon the suit went to judgment in favor of the Wightmans, and the real estate and cattle covered by their third mortgage were sold thereunder. The cattle were bid in by plaintiff for the sum of $20,000. The first mortgage of the bank was duly paid from the proceeds, and the balance applied upon the judgment. Defendants gave notice of appeal from the order refusing to compel a foreclosure of the Rais

mortgage in the action, but the appeal was never perfected.

Thereafter plaintiff brought this action in the superior court of Gila county to foreclose the second, or Rais, mortgage against the real estate covered by it. Defendants, answering the complaint for foreclosure, set up, in substance, the following defense: That the Rais indebtedness had, as security for its payment, in addition to the mortgage on the real estate covered by the declaration of homestead, a second mortgage on the cattle foreclosed in the suit in Graham county, and that plaintiff had promised to exhaust the proceeds of the cattle before proceeding against the land; that the cattle brought far more than sufficient to satisfy the first mortgage of the bank; and that it was therefore the duty of plaintiff to apply the surplus proceeds of the sale of the cattle on the next, or Rais, mortgage covering them, to its satisfaction, before any of it could be applied upon the third mortgage which had been foreclosed in Graham county by plaintiff and Rolla Wightman. Plaintiff replied, setting up a plea of *res adjudicata* by means of the suit in Graham county. The matter was heard before the court, which rendered judgment in favor of plaintiff for foreclosure of the mortgage on the homestead, and from the judgment an appeal was taken to this court.

In determining this case, there are but two questions for us to consider, both of law: First, was the judgment in Graham county *res adjudicata* as to any right of defendants to compel plaintiff to apply the proceeds of the sale of the cattle to the Rais mortgage? And, second, if it was not, did defendants have the right to compel such application? In the proceedings in Graham county the complaint did not seek the foreclosure of the Rais mortgage. Defendants attempted by motion to compel plaintiff to add

that issue to the complaint, and the court refused to include it. To say that the refusal of the court to include a certain question in a suit involving another matter, which does not necessarily depend upon the one not included, is a determination of the merits of the excluded matter would certainly seem a rather unusual conclusion. Neither the mortgagor nor a senior or junior encumbrancer can compel the holder of a mortgage to foreclose it, in the absence of a statute authorizing such action; the only right of the mortgagor being to tender the amount due on the mortgage and ask that it be canceled. *Kinlock* v. *Savage,* Speer's Eq. (S. C.) 464; *White* v. *Lucas,* 46 Iowa, 319; 27 Cyc. 1547.

Such being the case, when the superior court of Graham county refused to compel foreclosure of the Rais mortgage, it was in no sense *res adjudicata* as to that mortgage or as to any defense which could be made thereto.

We next come to the more serious question: Had defendants the right, when suit was actually brought, to foreclose the Rais mortgage to require plaintiff first to exhaust the security of the chattel mortgage covering the same indebtedness? It is urged by plaintiff that this is nothing more nor less than an attempt to compel a marshaling of assets, and that this is exclusively a right of a junior creditor, and not of a debtor. In our opinion, however, the claim of defendants does not rest upon the principles of marshaling, but upon the general policy of the homestead law. Under the law of Arizona, at any time before the actual sale of the property, the owner may declare a homestead which frees it from all liens not specifically made a burden thereon, either by the act of the owner or express provisions of law. We have declared the general policy of this state in regard to

exemptions from execution in *Wilson* v. *Lowry,* 5 Ariz. 335, 52 Pac. 777, where we say:

"It is the well-settled policy of the courts to liberally construe those humane and beneficent provisions of the law exempting certain property from execution for the payment of debts. The state has an interest in protecting families, and especially helpless children, against pauperism, and securing to them the means of reasonable comfort and education."

And again in *Wuicich* v. *Solomon-Wickersham Co.,* 18 Ariz. 164, 157 Pac. 972:

"Homestead statutes are enacted as a matter of public policy and in the interest of humanity. One of the objects is that everything shall not be taken from the family, and it left in a state of penury and pauperism, and its members perhaps a public charge. Such, indeed, we think is the public policy announced by our statute, wherein it exempts to the head of every family residing in this state from attachment, execution, and forced sale, 'real property . . . not to exceed in value the sum of $4,000.' . . ."

While the particular question involved is a matter of first impression in this state, yet the same issue has been raised in many other jurisdictions having homestead statutes, and it is generally held that the debtor himself can require of a creditor first to exhaust all other property against which he has a lien or even to resort to assets of the debtor upon which no specific lien exists, before enforcing the rights against the homestead. *Frick Co.* v. *Ketels,* 42 Kan. 527, 16 Am. St. Rep. 507, 22 Pac. 580; *McCreery* v. *Schaffer,* 26 Neb. 173, 41 N. W. 996; *Harris* v. *Allen,* 104 N. C. 86, 10 S. E. 127; *Blood* v. *Munn,* 155 Cal. 228, 100 Pac. 694; *Ralls* v. *Prather* (Ky.), 52 S. W. 800; *White* v. *Fulghum,* 87 Tenn. 281, 10 S. W. 501; *Nolan* v. *Nolan,* 155 Cal. 476, 132 Am. St. Rep. 99, 17 Ann. Cas. 1056, 101 Pac. 520; 38 C. J. 1375.

Nor can a creditor who can reach only the non-homestead property claim the right to compel one whose security extends to both to resort to the homestead premises first. *Mitchelson* v. *Smith,* 28 Neb. 583, 26 Am. St. Rep. 357, 44 N. W. 871; *Rozek* v. *Redzinski,* 87 Wis. 525, 58 N. W. 262; *In re Bailey* (D. C.), 176 Fed. 990.

The fact the homestead was declared after both mortgages were executed does not affect the general principle. Our statute allows such a proceeding, and it does not appear here, as in the case of *Nolan* v. *Nolan, supra,* the effect of our decision is "to promote a subsequent equity into a position of superiority to a prior equity to the injury of the holder of the latter," or that "for any special facts it would be inequitable to enforce it."

We are satisfied that, under the circumstances in this case, since plaintiff was in the possession of funds realized from the sale of the cattle, which defendants had the equitable right to insist should be applied first to the cancellation of the lien upon the homestead, the trial court erred in its judgment. It appears from the record that there has been credited upon the judgment secured in Graham county the full amount received from the sale of the cattle, after deducting what was due the First National Bank of Globe. It would be neither just nor equitable, therefore, to order judgment entered for the defendants in this action, as it is admitted they owe the amount of money secured by the Rais mortgage, and have received full credit on another indebtedness for the proceeds of the cattle. On the other hand, their homestead under the circumstances should not be subjected to a lien by reason of such mortgage.

The case is reversed and the cause remanded to the superior court of Gila county, with directions to enter judgment in favor of plaintiff for the amount

found due on the note secured by the Rais mortgage, but to deny the foreclosure of the mortgage on the land covered by the homestead, and order that the mortgage be canceled of record.

McALISTER, C. J., and ROSS, J., concur.