(133 So. 52)

## BANK OF LUVERNE v. TURK et al.

### 3 Div. 917.

Supreme Court of Alabama.

Oct. 23, 1930.

As Modified on Denial of Rehearing
Jan. 29, 1931.

Further Rehearing Denied April 2, 1931.

Frank B. Bricken, of Luverne, and Powell & Hamilton, of Greenville, for appellant.

Gipson & Booth, of Prattville, for appellees.

**FOSTER, J.**

Appellant, as a judgment creditor of E. J. Turk, by this proceeding, seeks to redeem his land from a mortgage to an insurance company. The land is a large tract which embraces the homestead of the mortgagor. The judgment is no lien upon the homestead.

The decree of the circuit court permitted a redemption only of the land not exempt, but required the payment of the entire mortgage debt. This would have the effect of relieving the homestead from the lien of the mortgage. But it is said that complainant cannot redeem the homestead because it has no lien on it, and that in effecting a redemption equity will not split up a debt so as to allow the payment of only a part of it. Applying the two principles, the court decreed a redemption upon full payment, but the homestead was not included.

Undoubtedly the judgment creditor cannot redeem without paying the entire mortgage debt. We think also that, in doing so, he is entitled to step into the shoes of the mortgagee to the extent of thereby acquiring all the security he holds for the debt. Lehman v. Moore, 93 Ala. 186, 9 So. 590; Jones v. Matkin, 118 Ala. 341, 24 So. 242; Wood v. Wood, 134 Ala. 557, 33 So. 347; Rothschild v. Bay City Lbr. Co., 139 Ala. 571, 36 So. 785.

In some of the cases supra, the complainant owned the equity of redemption in a part of the land mortgaged, and, as an abstract proposition, did not have the right to redeem the balance. In the other cases, a tenant in common owned only an aliquot portion, and had no such right as to the other portions. Yet, in each instance, he was required to pay the entire debt and redeem all the land and all interests, including such as he had not previously acquired.

We cannot see any difference in principle here. The mortgagor had waived his homestead as to the mortgage debt, and it was as much a part of the security for that debt as was the balance of the land.

Appellee relies upon a statement in 42 Corpus Juris, 369, which supports the decree, and is based upon two Iowa cases. In the more recent of the two cases, Sutherland v. Tyner, 72 Iowa, 232, 33 N. W. 645, where the facts are similar to those on this appeal, the court held that complainant could not redeem the homestead but in redeeming the balance of the land, on which he had a judgment lien, he should not be required to pay the whole mortgage debt in order to redeem that portion. The court therefore had the value of the homestead appraised, and the amount of such value deducted from the mortgage debt to ascertain the amount necessary to pay on redemption.

We cannot approve that practice, and such was not decreed by the circuit court in this case. It would have the effect of splitting the transactions into two parts without the consent of the mortgagee. Indeed, appellee is far from seeking such effect.

The Iowa court in passing that judgment does not refer to Spurgin v. Adamson, 62 Iowa, 661, 18 N. W. 293. That case, under somewhat similar circumstances, held that the creditor could not redeem the homestead, and in redeeming the balance, he must pay the whole mortgage debt, thereby supporting the decree rendered in this case. As we understand the cases, they conflict in that respect. Certainly the more equitable rule is that set forth in the case first mentioned, but we cannot approve that conformably to our own theories of the equitable principles that should apply.

Having proceeded thus far, appellant contends that it as the substituted mortgagee has the right to require that the homestead be separately sold first, and that the proceeds of such sale be first applied to the mortgage debt.

On that subject it is not necessary for the purposes of this case to reconsider the position taken by this court in Bramlett v. Kyle, 168 Ala. 325, 52 So. 926, following what is said to be the weight of authority (3 Jones on Mortgages [8th Ed.] §§ 2097 [1632], 1655 [1286]), to the effect that a mortgagor has no equitable right to require a mortgagee, in foreclosing his mortgage, first to sell that portion of the mortgaged property which is not the homestead, so that the homestead will be left to him free from the claims of other creditors; and that, as the mortgagor has no such right, the mortgagee may exercise his own judgment and discretion free of control by the mortgagor or the court.

But that case is not directly in point, and another principle would seem to prohibit appellant from indirectly securing for its judgment the proceeds of a sale of the homestead. This court has held that a judgment creditor may not, through the doctrine of marshaling securities, require a mortgagee, with a lien on the homestead and other property, to exhaust the homestead first, so as to leave the other property for the judgment. Talladega Bank v. Browne, 128 Ala. 557, 29 So. 552; Ray v. Adams, 45 Ala. 168; 38 C. J. 1375; 2 Story's Eq. (14th Ed.) § 871. In the former

case it is said that neither the doctrine of marshaling securities nor subrogation may accomplish the result of subjecting property to incumbrances not created by the debtor himself. Neither do we think that this result can be accomplished by the doctrine of redemption.

Our conclusion therefore is that, if complainant shall redeem from the first mortgage, and the land is sold in its foreclosure, out of the remainder of the proceeds of the sale after satisfying the mortgage debt, there shall be set aside for E. J. Turk as much as $2,000 in lieu of his homestead rights, if that amount remains, subject to the lien of the second mortgage if found to exist.

The amount then remaining should be paid to appellant to the extent of its judgment, or on the second mortgage, one or both, as the court shall direct according to their respective priority and amount.

In connection with the second mortgage, we observe the following situation:

The mortgagor E. J. Turk and his wife executed a second mortgage, pending the suit at law by appellant against him. It was given to the Autauga Bank & Trust Company and E. J. Turk, guardian for Annie C. and Olive E. Turk. E. J. Turk was the mortgagor in both mortgages, and also was a mortgagee for the minors in the latter. The mortgage recited that it was to secure certain notes to the bank and others to E. J. Turk, guardian for the minors. The notes, which had been executed to the bank, were transferred to Mrs. Dannie E. Turk, wife of E. J. Turk. The notes of E. J. Turk, guardian, were not transferred. The bill attacked the transfer of the bank's notes, claiming that they were paid, and that the transfer to Mrs. Turk was merely colorable. The court sustained that claim, and decreed on it for complainant.

No question as to that issue is involved on this appeal taken by complainant who was successful as to it. But the bill also made an attack upon the mortgage in so far as it undertook to secure the notes of E. J. Turk, guardian, as not being a bona fide transaction, and that it was without consideration, etc. The minors were not made parties to the suit, and the circuit court decreed that no relief could be granted on that claim in their absence.

It appears that, when the mortgage was given, Turk had not been appointed guardian, but was administrator of the estate of his first wife who was the mother of the minors. Later, he, as such administrator, made settlement in the probate court. That court then ascertained the amount of such estate which was due the minors by him as administrator. He had shortly before been appointed guardian for them. The effect of

the mortgage was, as to the minors, the declaration of an equitable trust, or an equitable mortgage, for the security of an alleged debt to them by Turk, the mortgagor.

Second mortgagees in a suit for the foreclosure of a mortgage are proper parties, and necessary in order to conclude them by the decree. Cullum v. Batre, 2 Ala. 415; Wiley v. Ewing, 47 Ala. 418; Lyon v. Powell, 78 Ala. 351; Bolling v. Pace, 99 Ala. 607, 12 So. 796. "All persons who are interested, legally or beneficially, in the subject-matter of the suit, whose rights or interests are affected, or sought to be concluded by the decree, are necessary parties to the bill." Perkins v. Brierfield Iron & Coal Co., 77 Ala. 403.

In this case, the situation is that of a suit by an apparent third lienholder to redeem from the first lien, and then foreclose it, not only to satisfy the debt thus secured, but also to satisfy the third lien of the complainant. Complainant has also attacked the virtue of the second lien, and, upon the basis of that attack, claims the balance of the proceeds of the foreclosure sale in preference to the claim of a lienholder which is apparently superior to its claim. To accomplish this result the second lienholder must be made a party, and relief as prayed cannot be decreed without his presence. Some of the beneficiaries under the second mortgage, to wit, the minors, are not made parties.

But, not controverting the necessity of having the minors duly represented, in order to have their rights affected, appellant's contention is that, because under section 5686, Code, an infant must be defended by a guardian ad litem, and under section 5689, Code, a guardian may sue in his own name and recover for the use of the ward, and under section 8256, Code, an infant may be represented by his general guardian without a guardian ad litem (Hall v. Hall, 219 Ala. 199, 121 So. 718), therefore the rights and interests of the infant are duly cared for, if the person who has been appointed their guardian is before the court, though he is not made a party as such guardian, and though the infants are not made parties and served as provided by law, and though there is no crossbill by the alleged guardian seeking relief for the minors.

But when the property rights of an infant are sought to be affected by a decree, the uniform ruling of the court has been that "it cannot be supported unless the record shows affirmatively that, in the precise mode the statutes and rules of practice prescribe, the infant has been brought before the court, and to represent and defend in his behalf a guardian ad litem has been appointed." Woods v. Montevallo C. & T. Co., 107 Ala.

364, 18 So. 108; Griffith v. Ventress, 91 Ala. 366, 8 So. 312, 11 L. R. A. 193, 24 Am. St. Rep. 918; Hibbler v. Sprowl, 71 Ala. 50. However, a later statute, section 8256, Code, provides the infant may be represented by his general guardian without a guardian ad litem. Hall v. Hall, 219 Ala. 199, 121 So. 718. But it is irregular to decree upon the property rights of an infant unless he is a party and served with process as provided by statute. Herring v. Ricketts, 101 Ala. 340, 13 So. 502; Irwin v. Irwin, 57 Ala. 614, and authorities supra. Error in this respect is not cured by the appearance of the general guardian appointed under our laws. Irwin v. Irwin, supra; Clark v. Gilmer, 28 Ala. 265.

We agree with the conclusion reached by the circuit court that it should not pass upon the rights of the minors under the mortgage referred to as the record now appears.

█ The insurance company made no active contest of complainant's claim, and there is no allegation in the pleading that there had been an offer to redeem and a refusal by the company, and no tender was made with the money paid into court, and, therefore, the court properly declined to tax any of the cost against it. McGuire v. Van Pelt, 55 Ala. 344.

But we see no occasion for requiring complainant to pay all the costs, including that incurred in the controversy with Turk, as a condition to his redemption, and as preliminary to a decree of foreclosure. It should be required to pay along with the mortgage debt only such of the costs as was incurred by the insurance company.

On final decree the circuit court will tax the costs of that court without direction now given by us.

The decree of the circuit court did not conform in all respects to the views we have expressed. We deem it proper to remand the case for further proceedings to conform with such views.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

## On Rehearing.

FOSTER, J.

It is urged on rehearing that we are disregarding the case of Bramlett v. Kyle, supra. But if we give full effect to the question there directly involved, it would not necessarily be conclusive in this case. That was between a mortgagor and his mortgagee, and only indirectly affected creditors not parties. It did announce a doctrine of marshaling securities which was only incidentally involved by way of argument, and contrary to our judgment now entertained. However, the conclusion was not followed in principle in our more recent case of Booker v. Booker, 220 Ala. 367, 125 So. 212, and is contrary to the holding in a majority of the states and authorities generally. Mounce v. Wightman, 29 Ariz. 567, 243 P. 415, 44 A. L. R. 754, and note pages 763 et seq.; Nolan v. Nolan, 155 Cal. 476, 101 P. 520, 132 Am. St. Rep. 99, 17 Ann. Cas. 1056 and note 1064; 5 Pom. Eq. § 2292 (869).

█ The controversy in this case is not directly between the mortgagor and the mortgagee, but with a judgment creditor who has no lien on the homestead, and who is seeking to subject the homestead to his judgment by an indirect method, admitting that it cannot be done by direct proceedings. To permit this creditor to redeem and then sell all the land first to pay the mortgage debt and then pay the judgment out of the balance without taking account of the homestead rights would have the same result as to permit him to require the mortgagee to sell the homestead first and leave the nonexempt property subject to sale under the judgment. This is the well-known doctrine of marshaling securities.

Undoubtedly, this doctrine is well recognized as a general rule in Alabama by the decisions (Coke v. Shropshire, 59 Ala. 542; Gusdorf v. Ikelheimer, 75 Ala. 148; Henderson v. Steiner, 202 Ala. 325, 80 So. 407; Orr v. Blackwell, 93 Ala. 212, 8 So. 413), and declared by statute (section 8938, Code). But when the homestead is involved, it is said in 2 Story on Eq. § 871, that: "This rule will not be enforced where its tendency will be to deprive the debtor of his homestead." And in 5 Pom. on Eq. § 2292, it is said: "That it cannot be invoked to compel a creditor to resort to a homestead in the first instance." In 18 R. C. L. 463, the statement is that: "In most jurisdictions the principle of marshaling does not apply to creditors thus situated, for its application would result in placing a greater burden on the exempt property than has been placed thereon by the debtor himself or by the law, and thus nullify the protection which the law provides for the debtor and his family." To the same effect is the text of 38 Corpus Juris, 1375, with a long list of authorities. The notes indicate that in Wisconsin and South Carolina the early cases did not follow this view, but statutes in both states have applied it effectually, and that Pennsylvania is stated to be the only state now maintaining this view; but Alabama is with the majority through its cases of Bank of Talladega v. Browne, supra; and Ray v. Adams, supra. For a discussion of this situation, see notes in 38 Corpus Juris, 1375 (n. 56 and 58 a and b.); 44 A. L. R. 758, 762, note; 17 Ann. Cas. 1063, note; Mitchelson v. Smith, 28 Neb. 583, 44 N. W. 871, 26 Am. St. Rep. 357.

Our two cases above cited do not contain an extended discussion of the subject, though they announce the principle as conclusive. But in Cochran v. Miller, 74 Ala. 50, 63, a statement is made without citation of authority, and not necessary to the result reached that the doctrine does apply to exempt property.

We take it, therefore, that, when arguendo the doctrine of marshaling securities is stated in our two cases to apply to the homestead, the statements were made without due consideration of our own and other cases on the subject not necessary to the result reached, and not sound in principle and contrary to the overwhelming weight of authority. We therefore cannot follow the dictum there stated as controlling in this case.

Our conclusion is, as expressed in the former opinion, in effect, that a creditor with a lien on property other than the homestead cannot indirectly subject the homestead to his judgment by marshaling of securities, subrogation, redemption, or other method. Equity will never so construe one of its remedies as to conflict with the public policy of the state as expressed in its statutes and Constitution. This in no sense lessens the security of the mortgage to satisfy the debt secured by it. That debt must be satisfied before the homestead rights shall operate.

We wish to modify the former opinion in respect to the taxation of the costs of the circuit court, which did not accrue on appeal, so that we now permit that court to tax such costs without direction from us, and substitute the opinion as it now appears for what was previously written.

As thus modified, the opinion is adhered to, and the application is overruled.

All the Justices concur.