Sims *v.* McFadden.

4-9262                                              233 S. W. 2d 375

Opinion delivered October 30, 1950.

*Golden Blount* and *Harry Neelly*, for appellants.

*C. E. Yingling, C. E. Yingling, Jr.,* and *Wm. H. Roth,* for appellee.

GEORGE ROSE SMITH, J. This is a proceeding brought by the appellee Malcolm McFadden to obtain the dissolution of an insolvent partnership in which he and the appellant A. O. Sims were partners. The questions presented by this appeal are whether the chancellor sufficiently protected Sims' homestead and whether the decree correctly adjudicated the priorities of the firm's various creditors.

On April 1, 1948, McFadden and Sims formed a partnership to operate an automobile agency in Searcy. At that time Sims and his wife jointly owned a parcel of urban property on which were situated their dwelling and also a business building in which Sims had been conducting a garage business. About a year earlier the couple had mortgaged this property to Mrs. Sims' brother, M. M. Garrison, to secure a debt of $5,500. In the court below Garrison asked that his mortgage be foreclosed, and the court granted that relief. No one now disputes the priority of Garrison's mortgage over the claims of other creditors.

McFadden testified that when the partnership was formed Sims agreed to contribute this real estate to the venture. Sims denies this, saying that the firm was merely to occupy the premises rent free. Every one agrees that the partnership did occupy the business building on the parcel of land and that the Sims family continued to make their home in the dwelling house. We think the clear preponderance of the testimony supports the chancellor's finding that Sims agreed to contribute to the business all the real estate except his dwelling house. On two occasions the firm gave financial statements listing the parcel of land as a partnership asset. In November of 1948 the partners signed a memorandum assuming the Garrison mortgage and reciting that title would vest

in the partnership when the mortgage was paid. Thereafter a payment of $250 upon the mortgage was made with partnership funds. These facts leave us with no doubt that the commercial part of the real estate was contributed by Sims to the firm when it began business.

In spite of this evidence Sims insists that he could not validly turn his homestead over to the firm, since our statute provides that any conveyance of a homestead is void if the wife does not join in the deed. Ark. Stats. 1947, § 50-415. Sims' theory is that since the area of this entire parcel is less than the constitutional minimum of a quarter of an acre for a homestead, he could not devote a part of it to commercial purposes without his wife's joinder. But the answer is that we are not dealing with a conveyance of a homestead. Instead, Sims' conduct amounted to an abandonment of his homestead right in the area devoted to commercial use, and we have often held that a husband may abandon his homestead without his wife's consent. *Sidway* v. *Lawson,* 58 Ark.. 117, 23 S. W. 648; *Stewart* v. *Pritchard,* 101 Ark. 101, 141 S. W. 505, 37 L. R. A. (N. S.) 807.

Thus Sims could and did contribute to the partnership all the tract of land except his dwelling and its curtilage. The entire tract was mortgaged to Garrison, who asks that his mortgage be foreclosed. It seems likely that the proceeds of sale will materially exceed the amount of the mortgage debt. The most serious question in the case concerns the proper disposition of the surplus after the mortgage debt has been paid.

It is shown by uncontradicted testimony that the dwelling house and its surrounding yard comprise 26.5% of the total value of the tract. The chancellor, taking the view that Garrison should be required to proceed first against the security which he alone could reach, directed that the first 26.5% of the proceeds of sale should be applied upon the mortgage debt. The decree provides that the remaining 73.5% of the proceeds shall be applied first to satisfy the rest of the mortgage debt, and any remaining balance shall be divided equally between Mrs. Sims (whose interest as a tenant by the entirety is not

subject to her husband's debts) and the common creditors of the partnership.

This decree would ordinarily be a proper marshaling of the assets, since the general rule is to require a secured creditor to proceed first against that part of his security that the common creditors cannot reach. But when a homestead is involved there is a well recognized exception to this rule. One whose homestead is mortgaged along with other property is entitled to demand that the mortgagee proceed first against the other property. *Bank of Hoxie* v. *Graham,* 184 Ark. 1065, 44 S. W. 2d 1099. In this situation a common creditor cannot invoke the ordinary rule that requires the secured creditor to look first to that part of his security that the other creditors cannot reach. *Bank of Luverne* v. *Turk,* 222 Ala. 549, 133 So. 52; *Mounce* v. *Wightman,* 29 Ariz., 567, 243 P. 415. The law is so solicitous of the homestead right that the secured creditor will be required to exhaust his non-exempt security first, even though this procedure entails a loss to the common creditors. *Nolan* v. *Nolan,* 155 Calif. 476, 101 P. 520; *Kerens Nat. Bk.* v. *Stockton,* 120 Tex. 546, 40 S. W. 2d 7.

In view of these principles we must reverse that part of the decree that makes the homestead itself primarily liable for the mortgage debt. The proceeds of sale will be applied first to the satisfaction of the mortgage. Next, 26.5% of the original proceeds of sale (or whatever lesser amount is all that remains) will be paid to the Simses as their homestead interest. This 26.5% is in its entirety exempt from the claims of common creditors. Mrs. Sims' share is of course not subject to the claims of her husband's creditors. Sims' own share is also exempt, for we have held that when a homestead is sold at a forced sale, as distinguished from a voluntary sale, the debtor's share of the proceeds is exempt if he intends to use it to acquire another homestead. *Simpson* v. *Biffle,* 63 Ark. 289, 38 S. W. 345; see also, *Franklin Fire Ins. Co.* v. *Butts,* 184 Ark. 263, 42 S. W. 2d 559. Sims has insisted upon his homestead rights from the inception of this suit, and we think he should be allowed a reasonable time in which

to invest his share of the proceeds in another homestead.

After the payment of the 26.5% to the Simses any remaining balance will be divided equally between Mrs. Sims as co-owner of the property and the creditors of the partnership. We think it necessary to add that since the tenancy by the entirety attaches to the proceeds of sale it is perhaps true that either Mrs. Sims or the creditors might have demanded that this remaining part of the purchase price be held by the court until the tenancy by the entirety is terminated by the death of either the husband or the wife. But neither the creditors nor Mrs. Sims has made this suggestion, and we treat their silence as an acquiescence in the chancellor's decision to divide the sum equally.

The other provisions of the decree are correct. Here the controversies arise from an unrecorded chattel mortgage given by Sims to his father-in-law, O. M. Garrison, in 1946—long before the partnership was organized. This mortgage covered certain garage equipment that Sims later contributed to the original capital of the firm. In August of 1949 the firm gave a chattel mortgage to the Security Bank, conveying "all garage equipment contained in an automobile garage, show room and paint shop located at 1512 East Race Street, Searcy, Arkansas . . ." Under our decisions this is a valid description. Hughes, Arkansas Mortgages, § 63. The bank recorded its mortgage promptly, while Garrison's was not recorded until after this suit was filed. The chancellor correctly gave priority to the instrument first placed of record. Ark. Stats., § 51-1002.

The remaining issue is that of priority between Garrison's chattel mortgage and McFadden's claim for capital advanced in addition to his original contribution. The partners at first made capital contributions of equal value, but when the firm began to encounter financial problems McFadden from time to time advanced an additional $5,300, Sims agreeing that the firm would repay these advances. The decree gives McFadden judgment for $5,300 and makes it subordinate to all other claims

except Garrison's judgment under his chattel mortgage, over which McFadden is awarded priority.

An unrecorded mortgage is good in Arkansas against the mortgagor, his heirs, general creditors having no specific lien, and others who merely stand in the mortgagor's shoes. But it is not good against strangers. Hughes, *supra*, § 136. The question is therefore whether a stranger acquired rights in the property before the mortgage was recorded. The answer must be in the affirmative. Sims contributed the mortgaged property to the partnership, and McFadden contributed a like amount of capital upon the assumption that the property was unencumbered. Under the Uniform Partnership Act the partners became tenants in partnership as to this property. Ark. Stats., § 65-125. As such a tenant Sims no longer had any individual property in any specific asset of the partnership, his interest being limited to his share of the profits and surplus. § 65-126. The firm itself acquired title to the property, and by the terms of the Act a partnership can receive and convey property in its partnership name. § 65-108. In view of this provision it is generally held that at least as to conveyances the Act treats a partnership as an entity rather than as an aggregate of its members. 7 U. L. A. § 6, note 8. Hence the partnership took the property free of the unrecorded mortgage, and a partnership creditor stands in the same position. McFadden's claim for capital contributions is a partnership debt, § 65-140 (b, III), and as to partnership assets it is entitled to priority over Garrison's claim against Sims as an individual. § 65-140 (h).

As to the distribution of the real estate proceeds the decree is reversed and the cause remanded. In other respects the decree is affirmed.