Larry K. LEE, et ux. *v.* MERCANTILE FIRST NATIONAL BANK of Doniphan

CA 88-283                                            765 S.W.2d 17

Court of Appeals of Arkansas
Division I
Substituted Opinion delivered February 22, 1989*
[Rehearing denied March 22, 1989.]

---

*REPORTER'S NOTE: Original opinion delivered February 15, 1989.

12

*Scott Manatt*, for appellant.

*Riffel, King & Smith*, for appellee.

MELVIN MAYFIELD, Judge. The first question in this appeal involves the right of a mortgagee to require that other mortgaged property be sold and the proceeds applied to the indebtedness due, before a mortgaged homestead is sold.

On June 6, 1977, Larry Lee and his wife executed to Corning Savings and Loan Association a note in the amount of $38,500.00 secured by a mortgage upon commercial property owned by them. On November 13, 1981, Larry Lee and his wife executed to Corning Savings and Loan a note in the amount of $43,500.00 secured by a mortgage upon residential property owned by them.

On October 23, 1984, Lee's National Pump & Supply Co., Inc., an Arkansas corporation owned by Larry Lee and his wife, executed to the Mercantile First National Bank of Doniphan (Missouri) a note in the amount of $256,800.00 secured by a deed of trust on the same commercial property which secured the $38,500.00 note to Corning Savings and Loan. Also, on the same day, Lee's National Pump & Supply executed to the Bank of Doniphan a note in the amount of $100,000.00 secured by the same deed of trust which secured the bank's $256,800.00 note.

On February 4, 1987, Corning Savings and Loan assigned its notes and mortgages to the Bank of Doniphan. In July of 1987, the bank filed suit against Larry and Sonia Lee, and against Lee's National Pump & Supply, seeking judgment for the amounts due on the notes executed and assigned to it and seeking foreclosure of the mortgages and deed of trust securing the notes.

The appellants, Larry and Sonia Lee, filed an answer to the complaint alleging that their personal liability had been discharged in bankruptcy. They also alleged that the residential property described in the mortgage which secured the $38,500.00 note to Corning Savings and Loan was their homestead, that this property was exempt, and that it had been claimed as exempt in the bankruptcy proceedings. Appellants further alleged that this property was exempt from foreclosure by the Bank of Doniphan and alleged that the bank could not better its position in that regard by the purchase and assignment of the notes and mortgages from Corning Savings and Loan. Appellants affirmatively alleged they were entitled to marshal the two properties mortgaged to Corning and assigned to the Bank of Doniphan, so that the commercial property would be sold first and any sum received in excess of the indebtedness due on the notes secured by the mortgages executed to Corning be delivered to appellants.

Judgment was entered finding the amount due on the June 6, 1977, note to Corning, secured by mortgage on commercial property, to be $26,390.13; the amount due on the November 13, 1981, note to Corning, secured by mortgage on residential property, to be $50,071.42; and the total amount due on the notes of October 23, 1984, to the Bank of Doniphan to be $236,346.03. The judgment was filed on December 15, 1987, with the amounts due calculated as of November 13, 1987, and interest at 10% to

run on those amounts from that date. The appellee's personal obligation having been discharged in bankruptcy, judgment for the amounts due were *in rem* against the mortgaged property.

Both tracts (commercial and residential) were ordered sold and the proceeds applied on the amounts due. The judgment also provided:

> That should there be any overplus above $50,071.42 [the amount due on the note secured by the residential property] from the sale of [the residential property] all such overplus shall be applied to the use and benefit of Defendants Larry K. Lee and Sonia Lee herein, being the homestead of said parties.

On appeal, the appellants point out that there was only one mortgage on the residential property; that Larry Lee testified this was his and his wife's homestead; and that the trial court found this property was their homestead. Therefore, appellants contend, the commercial property should have been ordered sold first with the proceeds therefrom to be applied first against the amount due on the obligations secured by the mortgages executed in favor of Corning Savings and Loan. We agree.

Except for items not involved in this case, the Arkansas Constitution exempts a homestead from forced sale to collect debt. A rural homestead of less than 80 acres is exempt regardless of its value. Ark. Const. art. 9, § 4. In this case, the trial court obviously found that all the residential property mortgaged by appellants was homestead property. There is no appeal from that finding. The mortgage executed by appellants was, of course, a waiver of their homestead exemption as to the debt secured by that mortgage. *See Ragsdell* v. *Gazaway Lumber Co., Inc.,* 11 Ark. App. 188, 668 S.W.2d 60 (1984). However, because of the exempt status of the homestead, it is generally held that "if the obligation is secured by the homestead premises and also by other property of the debtor, the latter may require the creditor to satisfy his demand by resort to the other property before having recourse to the homestead land." 40 Am. Jur. 2d *Homestead* § 91 (1968).

This is also the rule in Arkansas. In the early case of *Littell* v.

*Jones*, 56 Ark. 139,[1] 19 S.W. 497 (1892), the court's ruling on this point is summarized in headnote 4 as follows:

> Where minor children claim a homestead in a part only of the land left by their mother, all of which was subject to a mortgage executed by her, the part not claimed should first be sold to satisfy the lien to which the right of the children was subject.

*Grimes* v. *Luster*, 73 Ark. 266, 84 S.W. 223 (1904), relied upon *Littell* v. *Jones* and summarized the holding of that case in these words:

> In *Littell* v. *Jones*, 56 Ark. 139, an action was brought by next friend of minors to select and set apart to them a homestead in a tract of 240 acres, and to require a creditor holding a mortgage upon the whole to be limited to the part not selected as homestead. The selection was held proper to be made, and the mortgage, which was subject to their rights, enforced only against the surplus over the homestead.

73 Ark. at 269. In *Bank of Hoxie* v. *Graham*, 184 Ark. 1065, 44 S.W.2d 1099 (1932), the court held that a widow and children, who claimed a homestead in part of a tract which was subject to a mortgage, were entitled to have the remaining land sold first in satisfaction of the mortgage. In reaching that decision, the court summarized its reliance upon the *Grimes* v. *Luster* interpretation of *Littell* v. *Jones*, in the following conclusion:

> As we have already seen, the whole theory of our homestead laws is based upon the idea of giving a family home to debtors, which is exempt from the liens of judgments and executions levied upon them except in certain specified cases. The policy of the statute is to preserve the home to the family, and we think the interpretation put upon the case of *Littell* v. *Jones*, 56 Ark. 139, 19 S.W. 497, in the later case of *Grimes* v. *Luster, supra*, is applicable to this case, and should govern.

184 Ark. at 1071. The *Bank of Hoxie* v. *Graham* case was cited in

---

[1] In some volumes of 56 Ark., this case appears at page 130.

*Sims* v. *McFadden*, 217 Ark. 810, 233 S.W.2d 375 (1950), for the holding that "one whose homestead is mortgaged along with other property is entitled to demand that the mortgagee proceed first against the other property." 217 Ark. at 813. And in *McMillan* v. *Palmer*, 198 Ark. 805, 131 S.W.2d 943 (1939), the opinion concludes by stating: "The homestead property may not be sold unless the other or remaining property be insufficient to pay the indebtedness." 198 Ark. at 811. Finally, all of the above cases are cited with approval in *Alston* v. *Bitely*, 252 Ark. 79, 477 S.W.2d 446 (1972), at 252 Ark. 99-100.

Under the authority of the cases cited above, we think the appellants were entitled to have the commercial property sold first and the proceeds applied first to the indebtedness due on the mortgages executed in favor of Corning Savings and Loan. However, the decree entered by the trial court ordered both the commercial and the homestead properties sold. This is not what the cases cited above hold. The decree in this case should have required that the *commercial* property be sold *first* and the proceeds therefrom be applied first to the indebtedness due to Corning.

The second question in this appeal is raised by assuming that the sale of the commercial property does not produce enough money to pay the amount due Corning on its mortgages. Obviously, the homestead property would then be sold. The question is—what if that sale produces more than enough to pay the indebtedness due on the mortgages to Corning? We think the answer is—the balance would go to appellants as proceeds of the sale of exempt homestead property. The trial court's decree is, at least, unclear in this regard.

In some situations, the doctrine of marshaling assets would allow the balance assumed in the above paragraph to go to the Bank of Doniphan. That doctrine is defined in 53 Am. Jur. 2d *Marshaling Assets* § 1 (1970) as follows:

> Marshaling is an equitable principle, in accordance with which assets and securities of a debtor are resorted to or apportioned in such a manner as to secure protection to the rights of each of two or more creditors, or of a creditor and some person other than a creditor having an interest in such assets and securities.

The court in *Bank of Bentonville* v. *Swift & Co.*, 233 Ark. 808, 348 S.W.2d 881 (1961), quoted this definition with approval. However, in the instant case, the Bank of Doniphan cannot rely on this doctrine. The reason for this is clearly explained in the following quotation from *Sims* v. *McFadden*, 217 Ark. 810, 233 S.W.2d 375 (1950).

> This decree would ordinarily be a proper marshaling of the assets, since the general rule is to require a secured creditor to proceed first against that part of his security that the common creditors cannot reach. But when a homestead is involved there is a well recognized exception to this rule. *One whose homestead is mortgaged along with other property is entitled to demand that that mortgagee proceed first against the other property. Bank of Hoxie* v. *Graham*, 184 Ark. 1065, 44 S.W.2d 1099. In this situation a common creditor cannot invoke the ordinary rule that requires the secured creditor to look first to that part of his security that the other creditors cannot reach. *Bank of Luverne* v. *Turk*, 222 Ala. 549, 133 So. 52; *Mounce* v. *Wightman*, 29 Ariz. 567, 243 P. 415. *The law is so solicitous of the homestead right that the secured creditor will be required to exhaust his non-exempt security first, even though this procedure entails a loss to the common creditors. Nolan* v. *Nolan*, 155 Cal. 476, 101 P. 520; *Kerens Nat. Bank* v. *Stockton*, 120 Tex. 546, 40 S.W.2d 7.

217 Ark. at 813 (emphasis added).

The appellee, Bank of Doniphan, contends that the rule in *Sims* does not apply to it since it is not a common creditor. The case of *Marr* v. *Lewis*, 31 Ark. 203 (1876), holds otherwise. There, Herbert Marr had mortgaged several tracts of land to James Lewis and afterward mortgaged some of the same land to Lorinda Marr. Herbert Marr died and his widow and children continued to occupy as a homestead some of the land described in the first mortgage, but this homestead property was not included in the second mortgage. Because of the widow's homestead exemption claim, the Arkansas Supreme Court held the doctrine of marshaling assets was not available to the holder of the second mortgage. The court said this doctrine was an equitable doctrine that was not available when it would operate inequitably on the

interests of others. To require the property covered by the first mortgage to be sold before the property covered by the second mortgage would have deprived the widow of her homestead claim, the court said, and "for this reason" the application of the second mortgage holder to marshal the assets should have been refused. *See also* Hughes, *Arkansas Mortgages* § 411 (1930). This is also the general rule. *See* 53 Am. Jur. 2d *Marshaling Assets* § 25 (1970). Thus, the rule against marshaling assets when it would cause a homestead to be sold, applies when the second creditor holds a mortgage that does not include the homestead as well as when he is a common creditor.

■ Neither are we impressed with the appellee's contention that its assignment of Corning's mortgages gives appellee the right to prevail over appellants' claim of homestead exemption. The assignment certainly cannot give the appellee greater rights than Corning had. Moreover, in regard to equitable considerations, we note that an assistant vice-president for the appellee, Bank of Doniphan, testified that when the bank purchased the notes and mortgages from Corning it was aware that one note and mortgage covered appellants' residential property and that appellants' homestead exemption claim had been previously made in the bankruptcy proceedings.

We reverse and remand this case for further proceedings not inconsistent with this opinion.

CORBIN, C.J., and COOPER, J., agree.