In re Freeman Dale CRABTREE, an individual, Debtor.

In re DAVID LYNN CRABTREE TRUST, an Oklahoma business trust, Debtor.

In re Linda Catherine CRABTREE, an individual, Debtor.

In re CATHERINE DIANNE CRABTREE TRUST, an Oklahoma business trust, Debtor.

In re The ORCHARD COMPANY, an Oklahoma general partnership, Debtor.

Bankruptcy Nos. 87–9110–TS thru 87–9114–TS.

United States Bankruptcy Court, W.D. Oklahoma.

April 3, 1989.

---

Richard Bailey, Janice Loyd, McClelland, Collins, Bailey, Bailey & Bellingham, Oklahoma City, Okl., for debtors.

Michael P. Kirschner, Jackie L. Hill, Jr., Hastie & Kirschner, Oklahoma City, Okl., Bobbie G. Bayless, Bayless & Stokes, Houston, Tex., for trustee.

Collier H. Pate, Edward O. Lee, Pate & Payne, Oklahoma City, Okl., for City Bank and Trust.

Clyde Muchmore, Brooke Murphy, Karen Eby, Crowe & Dunlevy, Oklahoma City, Okl., for Campbell Group.

ORDER ALLOWING TRUSTEE TO SELL REAL PROPERTY AND OIL AND GAS INTERESTS AND PROVIDING FOR EQUITABLE DISTRIBUTION OF PROCEEDS FROM SALE OF COLLATERAL

JOHN TeSELLE, Bankruptcy Judge.

### BACKGROUND FACTS

Debtors are indebted to City Bank and Trust (hereinafter "City Bank") pursuant to a pre-bankruptcy obligation secured by 1) a security interest in securities; 2) a mortgage on oil and gas interests; and 3) a mortgage on real property encompassing Debtors' principal residence (hereinafter collectively referred to as the "Collateral"). City Bank's indebtedness is oversecured, and its security interest and mortgages are prior to any liens or interests claimed by other parties.

No other party holds an interest in the securities (hereinafter the "Securities"). Therefore, any surplus from the sale thereof will be property of the bankruptcy estate.[1]

1. City Bank foreclosed on part of the Securities prior to December 23, 1987, the date Debtors

The Campbell Group currently holds title to the oil and gas interests (hereinafter the "Oil and Gas Interests"), subject to City Bank's mortgage. However, Trustee is expected to contest the Campbell Group's claim in a subsequent action in these bankruptcy proceedings.

Debtors' home is situated on a lot exceeding the area which may be exempted as homestead under Oklahoma law. The allowed one-quarter acre claimed as exempt has been selected by Debtors, but has not yet been approved by the Court. After allocation of the applicable portion of the proceeds derived from the sale of the entire homestead towards the indebtedness due City Bank, the Campbell Group and Trustee will vie for any surplus attributable to the non-exempt portion of the homestead.[2]

## PROCEEDINGS

On December 8, 1988, City Bank filed its **Application for Order Authorizing Disposition of Property** (hereinafter the "Application"). City Bank seeks the Court's approval to issue special execution and an order to sell Debtors' real property at a sheriff's sale to satisfy indebtedness due it from Debtors. The real property at issue includes Debtors' residence located at 6907 Avondale Drive in Oklahoma City (hereinafter the "Residence").

Responses and/or objections to the Application were filed by Trustee, the Campbell Group, and Debtors. Trustee requests approval to sell the Residence pursuant to 11 U.S.C.A. § 363 (West 1979 & Supp. 1989), and urges the Court to deny City Bank's Application. The Campbell Group agrees sale of the Residence by Trustee will produce a greater monetary return for the bankruptcy estate and notes City Bank is adequately protected, thus its Application should be denied. Debtors ask the Court to deny City Bank's Application, urging that City Bank be required to proceed

against non-exempt collateral to satisfy the mortgage before executing on Debtors' homestead.

City Bank's reply to the responses and objections asserts it is the only entity in a position to insure prompt sale of the Residence, and again urges the Court to allow the sheriff's sale to proceed. Further, City Bank alleges Trustee has no right under § 363 to sell the exempt portion of Debtors' homestead, which comprises one-quarter acre of the Residence, because it is not property of the estate.

Subsequently, the Campbell Group submitted supplemental authority citing cases allowing a bankruptcy trustee to sell an asset, even though the debtors claimed part of the asset as exempt. City Bank's response to this supplemental authority contends the cases cited by the Campbell Group are inapposite because in each of those cases, the applicable state law placed a monetary ceiling on the homestead exemption rather than an acreage limitation as provided by Oklahoma law.

On February 10, 1989, City Bank amended its Application, adding a request to foreclose upon the Oil and Gas Interests. Trustee and the Campbell Group again responded, objecting for essentially the same reasons set forth originally. The Campbell Group also addresses City Bank's attempt to distinguish a "monetary cap" from an "acreage cap," and emphasizes that sale by Trustee will maximize the return to all creditors of this estate. Trustee's response additionally contains a request to proceed with sale of both the Residence and the Oil and Gas Interests.

The matter was set for hearing on March 16, 1989. Preceding the hearing, a status conference was held on March 6, 1989.

At the status conference, the Court submitted to the parties a proposed plan for the equitable distribution of the proceeds

---

filed their bankruptcy petition. The pre-petition proceeds total $222,344.46. Another sale was consummated January 22, 1988, and the remainder of the Securities were sold September 16, 1988, pursuant to this Court's Order of July 27, 1988. The post-petition proceeds amount to $29,346.00.

**2.** This is more fully explained in the proposed plan which is a part of this Order. *See infra* note 3.

of the sale of the Collateral (hereinafter the "Proposed Plan").[3] The sole objection to the Proposed Plan was filed by Debtors. Their objection asserts the Proposed Plan represents marshalling, and that marshalling is not applicable in this case. In addition, Debtors echo City Bank's contention that § 363 confers upon Trustee only a right to sell property of the estate, thus their exempt homestead cannot be sold by Trustee.

At the hearing both Trustee and the Campbell Group accepted the Proposed Plan, but Debtors continued to object and presented oral argument in support of their objection. Debtors' objection will now be considered.

### DEBTORS' OBJECTION

Essentially, Debtors' position is that proceeds from the sale of the Securities and the Oil and Gas Interests should be applied to reduce the indebtedness due City Bank before resorting to sale of the Residence. Applying the funds in this manner would enhance Debtors' apparent objective of redeeming the Residence from City Bank.

■ In support of their position, Debtors cite *Meyer* for the proposition that marshalling may not be employed where doing so will diminish rights to exempt property.[4] *Meyer v. United States*, 375 U.S. 233, 237, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963). Additionally, Debtors note that allowing a creditor in a bankruptcy proceeding to reach exempt property by way of marshalling appears to be in conflict with state laws which ordinarily do not allow creditors to reach exempt property. *Farmers & Merchants Bank v. Gibson*, 7 B.R. 437, 442 (Bankr.N.D.Fla.1980); *Genova v. Chavez (In re Chavez)*, 26 B.R. 129, 130 (Bankr.D. Colo.1983). Finally, Debtors contend if

marshalling is applied in this case, the results will be inequitable as to their interests.

The Court agrees that marshalling, as the term is applied by Debtors, is not applicable in this matter. Therefore, *Meyer, Gibson,* and *Chavez*, which are all marshalling cases, are not instructive.[5]

■ Debtors also rely upon an Arkansas Supreme Court decision which, as quoted by Debtors, appears to require a secured creditor to first exhaust non-exempt collateral even if the creditors will lose thereby. *Sims v. McFadden*, 217 Ark. 810, 812–14, 233 S.W.2d 375, 377 (1950). However, the facts in *Sims* reveal it is not entirely consistent with Debtors' argument that non-exempt collateral must be exhausted before executing on exempt property. In addition, to the extent *Sims* stands for the proposition that Debtors should receive the full value of their homestead exemption with no deduction for payment of the mortgage, this Court disagrees with its holding.

■ Debtors next contend that only City Bank as first mortgage holder is entitled to execute against their exempt homestead. Okla. Const. art. XII, § 2. Section 2 does provide for foreclosure in satisfaction of a mortgage on the homestead given by both husband and wife. *Id.* However, it does not preclude the type of sale contemplated in the Proposed Plan which provides for Debtors to receive, after payment of the mortgage, such remaining portion of the proceeds as is attributable to their homestead exemption.

Debtors cite 35 C.J.S. § 106 to support their claim City Bank is entitled to execute on non-exempt collateral before executing against Debtors' exempt homestead. 35

3. After a study of the foregoing described pleadings, the Proposed Plan was prepared by the Court in an attempt to resolve the many conflicting claims of the diverse parties to these proceedings in a fair and equitable manner. The March 16, 1989, hearing addressed the Proposed Plan as does this Order. Thus, the Proposed Plan is an integral part of this Order and made a part hereof.

4. The Court avoided using the term "marshalling" in the Proposed Plan, based upon its observation that when the term is used by the parties to this litigation its meaning tends to vary depending upon the point of view of the user and thus lacks precision.

5. The Court notes *Gibson* was subsequently vacated and remanded. *Peacock v. Gibson*, 81 B.R. 79, 81 (N.D.Fla.1981).

C.J.S. § 106 *Exemptions* (1960). This authority sets forth a "rule" that a creditor must first exhaust a debtor's non-exempt property before turning to exempt property for satisfaction of the creditor's lien. *Id.* However, the rule appears to relate to those cases where there is but a single creditor, was not presented in a bankruptcy context, and no Oklahoma cases were cited therein. This secondary authority is thus not applicable to these proceedings.

## APPLICABLE LAW

■ Trustee requests the Court to authorize her to sell the Residence and Oil and Gas Interests pursuant to § 363. The applicable subsection is § 363(f)(5), which provides:

(f) [t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C.A. § 363(f)(5) (West 1979 & Supp. 1989). Case law allows a bankruptcy trustee to sell property, part of which is exempt, then pay the debtors the portion of the proceeds attributable to their exempt interests after satisfaction of any mortgage indebtedness. *In re Johnson,* 30 B.R. 467, 469 (M.D.Tenn.1983); *In re Blakely,* 29 B.R. 354, 355 (Bankr.W.D.La.1983). City Bank points out that in the above cases the applicable state law imposed a monetary ceiling on the homestead exemptions rather than an acreage limitation as is imposed by Oklahoma law. However, it appears the value of the acreage comprising Debtors' homestead exemption is analogous to the amount allowed by a monetary ceiling. Thus, this distinction does not detract from the principle for which the cases were cited nor render these cases inapplicable to these proceedings.

If the Court requires, as Debtors request, that all non-exempt property be sold and the proceeds applied against the indebtedness due City Bank prior to the sale of the Residence, the effect will be to convert Debtors' non-exempt property into exempt property. Such a conversion is contrary to an equitable division of the proceeds of the property of the estate, and is not condoned by the Bankruptcy Code.

## DECISION

Trustee's request to proceed with sale of the Residence and the Oil and Gas Interests is granted. Trustee is urged to sell these items of Collateral as expeditiously as good business practices permit.

After Trustee's sale of the Oil and Gas Interests and the Residence, but prior to the Court's approval of Trustee's sale of the Residence, Trustee is to provide Debtors an opportunity to promptly redeem the Residence for the contract price. At that time, Debtors may apply such amount as is attributable to their homestead exemption against the contract price.

However, if Trustee has not disposed of both the Oil and Gas Interests and the Residence by August 1, 1989, City Bank may renew its request for approval of its Application.

Once all the Collateral has been sold, the secured claim of City Bank has been satisfied, and the Trustee–Campbell Group conflict has been resolved, the remaining net proceeds are to be distributed in accordance with the method set forth in the Court's Proposed Plan. This distribution will require, as contemplated in the Proposed Plan, the adjustment of the ratios to reflect actual monies received from sales of the Collateral.

IT IS SO ORDERED.

## PROPOSED PLAN FOR EQUITABLE DISTRIBUTION OF PROCEEDS FROM SALE OF CITY BANK'S COLLATERAL

Bank holds a first priority security interest in Residence, Oil Properties, and Stock. Bank is oversecured and entitled to be paid in full. Trustee and/or Campbell Group have a second priority position in the Oil Properties. Any surplus from the Stock is property of the estate and goes to Trustee.

**For illustrative purposes only** assume the following (as you will see values were assumed for convenience only and are not intended to bear any relationship to actual values):

Debt owed Bank—$480

On foreclosure, there is realized on the above collateral the following net amounts:

|  |  | Ratios |  |
|---|---|---|---|
| Residence | $300 | 3 | |
| Oil Properties | $200 | 2 | |
| Stock | $100 | 1 | |
| Total | $600 | 6 | units |
| Less amount due Bank | $480 | | |
| Amount available for distribution | $120 | | |

$120 / 6 units = $20 per unit

BANK MORTGAGE

The proposed distribution of the $120 would be as follows:

Stock 1 unit × $20 = $20 to Trustee

Oil Properties 2 units × $20 = $40 to Trustee and/or Campbell Group

Residence 3 units × $20 = $60 to be divided as follows:

Assume that the value attributable to the exempted portion of the Residence is $250 and the value of the non-exempt portion is $50 (total $300 as shown above).

The ratio of the exempt to non-exempt is 5:1 = 6 units.

$60 divided by 6 units = $10 per unit.

Debtor receives 5 units × $10 per unit = $50 as exempt property.

CG/Trustee receives 1 unit × $10 per unit = $10 for the non-exempt remainder.